No. 90-010

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STEVEN G. BOYD and JERRI BOYD,
Husband and Wife, and MONTANA
MEDICAL OXYGEN & SUPPLY, INC.,
a Montana Corporation,

Plaintiffs and Appellants,

-vs-

STATE MEDICAL OXYGEN & SUPPLY, INC.,
a Montana Corporation; LARRY R.
WILLIAMS; MARK C. HUNGERFORD; and
BRIAN R. CLOUTIER,

Defendants and Respondents.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable C. B. McNeil, Judge presiding.


COUNSEL OF RECORD:

For Appellants:

Lon J. Dale, Jon R. Binney; Milodragovich, Dale &
Dye, Missoula, Montana

For Respondent:

Dexter L. Delaney and P. Mars Scott; Mulroney,
Delaney & Scott, Missoula, Montana


Submitted on Briefs: August 30, 1990

Decided: October 23, 1990

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiffs, Montana Medical Oxygen and Supply, Inc., and Steven and Jerri Boyd (the Boyds), brought suit against defendants, State Medical Oxygen and Supply, Inc., Larry Williams, Mark Hungerford, and Brian Cloutier (State Medical), for damages for breach of contract, breach of the implied covenant of good faith and fair dealing, and conversion. State Medical brought a cross-claim against the Boyds for damages for breach of contract, breach of the implied covenant of good faith and fair dealing, and actual or constructive fraud. Following a jury trial in the District Court for the Eleventh Judicial District, Flathead County, the jury returned a verdict against the Boyds on the Boyds' claims, and against State Medical on State Medical's claims. Thus, no damages were awarded to either side. The District Court then denied the Boyds' motion for a new trial. The Boyds appeal. We affirm.

The issues are:

1. Are plaintiffs entitled to a new trial because the District Court erred in rejecting plaintiffs' special verdict form and replacing it with the court's own general verdict form?

2. Are plaintiffs entitled to a new trial because the District Court improperly admitted testimony of defendants' expert?

3. Are plaintiffs entitled to a new trial because the District Court failed to properly instruct the jury?

Steven and Jerri Boyd, husband and wife, owned and operated

a corporation known as Montana Medical Oxygen Supply, Inc. (Montana Medical). In 1983, the Federal Medicare Division initiated Medicare fraud charges against Montana Medical and Steven Boyd in federal court. These criminal charges resulted in a five year prison sentence for Steven Boyd and a $190,000 fine for Montana Medical. The federal judge agreed to review the prison sentence and fine under Rule 35 of the Criminal Rules of Civil Procedure if Steven Boyd would divest himself of all ownership in Montana Medical within 120 days. In response, Boyd executed an agreement with defendants Williams, Hungerford and Cloutier, for the sale and purchase of the assets and the assumption of certain liabilities of Montana Medical. At about the same time, the Boyds executed documents granting powers of attorney to Williams, Hungerford and Cloutier and providing them with the right to manage Montana Medical. Upon execution of these documents, the federal judge reduced Steven Boyd's prison term to sixty days and Montana Medical's fine to $19.00.

At about the same time as the pleas to the federal medicare fraud indictments were entered, Montana Medical and Steven Boyd were suspended from receiving Medicare reimbursements. As a result of the suspension and the criminal fines against Montana Medical, Williams, Hungerford, and Cloutier formed a new corporation, State Medical Oxygen and Supply, Inc. (State Medical), to purchase the assets of Montana Medical rather than purchasing the corporation outright. Once the federal sentences against Boyd and Montana

3

Medical were reduced, controversy between the parties delayed the closing date. Ultimately the Boyds terminated the defendants' powers of attorney. The Boyds claimed that defendants' continued management of the company beyond the termination of the powers of attorney was conversion. The Boyds also claimed that State Medical refused to close the deal resulting in breach of contract and breach of the implied covenant of good faith and fair dealing.

On the other side, State Medical claimed that the Boyds had fraudulently misrepresented the financial condition of Montana Medical which resulted in Williams, Hungerford and Cloutier having to infuse massive amounts of capital into the business to keep it going. Because Steven Boyd had to divest himself of ownership of Montana Medical within 120 days of the federal sentencing, the agreements between the parties were executed before in depth audits had been completed. Defendants claimed that the Boyds were the ones who never showed any interest in closing the deal, resulting in breach of contract and breach of the implied covenant of good faith and fair dealing.

The deal never closed and each party sought damages against the other, asserting that the other had caused the breach. The jury found against both parties and neither party recovered. The Boyds filed a motion for a new trial and the District Court denied the motion.

The Boyds claim that they are entitled to a new trial under the provisions of Rule 59(a), M.R.Civ.P., and under the provisions

4

of § 25-11-102, MCA, subsections (1), (3) an (7). Rule 59(a) states:

> **Rule 59(a). Grounds.** A new trial may be granted to all or any of the parties and on all or part of the issues for any of the reasons provided by the statutes of the state of Montana.
>
> A motion for new trial shall state with particularity the grounds therefor, it not being sufficient merely to set forth the statutory grounds, but the motion may be amended, upon reasonable notice, up to and including the time of hearing the motion.
>
> On motion for a new trial in an action tried without a jury, the court may take additional testimony, amend the findings of fact and conclusions of law or make new findings and conclusions, set aside, vacate, modify or confirm any judgment that may have been entered or direct the entry of a new judgment.

Section 25-11-102, states in pertinent part:

> **25-11-102. Grounds for new trial.** The former verdict or other decision may be vacated and a new trial granted on the application of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:
>
> (1) irregularity in the proceedings of the court, jury, or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial;
>
> . . .
>
> (3) accident or surprise which ordinary prudence could not have guarded against;
>
> . . .
>
> (7) error in law occurring at the trial and excepted to by the party making the application.

I

Are the plaintiffs entitled to a new trial because the District Court erred in rejecting plaintiffs' special verdict form and replacing it with the court's own general verdict form?

The District Court rejected the Boyds' special verdict form, concluding that it was virtually impossible to follow and was an

5

invitation for error. The Boyds' special verdict form had specifically delineated each of their three causes of action requiring the jury to vote separately on each claim. The court's general verdict form submitted to the jury stated in pertinent part:

Plaintiffs' claims:

1. Upon Plaintiffs' claims we find in favor of the Plaintiffs and award damages against the Defendant in the amount of $_____.

2. If your verdict is in favor of the Plaintiffs and includes damages for wrongful conversion of personal property, the date of conversion is found to be _____ and the value of the property converted on the date is $_____ and which value is to be included in the total amount due.

The Boyds submit affidavits from eight of the twelve jurors, claiming that these affidavits prove that the majority of the jurors thought that they must find all three of the Boyds' causes of action were present before they could award damages to the Boyds, and that the problem arose in establishing a date of conversion. The Boyds contend that such an interpretation by the jury was not contemplated by any of the parties or by the court at the time the court's general verdict form was presented to the jury. The Boyds assert the juror affidavits prove the jury was misled in its duties and is an irregularity in the proceedings that prevented the Boyds from having a fair trial under § 25-11-102(1), MCA, and/or was an accident under § 25-11-102(3), MCA.

The Boyds are attempting to use juror affidavits to impeach the juror's own verdict. Montana law on the use of juror

6

testimony and affidavits upon an inquiry into the verdict is summarized in Rule 606(b), M.R.Evid., as follows:

> (b) Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent or dissent from the verdict or indictment or concerning his mental processes in connection therewith. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.
>
> However, as an exception to this subdivision, a juror may testify and an affidavit or evidence of any kind be received as to any matter or statement concerning only the following questions, whether occurring during the course of the jury's deliberations or not: (1) whether extraneous prejudicial information was improperly brought to the jury's attention; or (2) whether any outside influence was brought to bear upon any juror; or (3) whether any juror has been induced to assent to any general or special verdict, or finding on any question submitted to them by the court, by a resort to the determination of chance.

The policy reasons behind this rule are well stated at 76 Am.Jur.2d, _Trial_, § 1219, which states in part:

> The rule is founded on public policy, and is for the purpose of preventing litigants or the public from _invading the privacy of the jury room, either during the deliberations of the jury or afterward. It is to prevent overzealous litigants and a curious public from prying into deliberations_ which are intended to be, and should be, private, frank, and free discussions of the questions under consideration. _Further, if after being discharged and mingling with the public, jurors are permitted to impeach verdicts which they have rendered, it would open the door for tampering with jurors and would place it in the power of a dissatisfied or corrupt juror to destroy a verdict to which he had deliberately given his assent under sanction of an oath._ . . .
>
> Testimony of the jurors to impeach their own verdict is excluded not because it is irrelevant to the matter in issue, but because _experience has shown that it is more_

7

<u>likely to prevent than to promote the discovery of the</u> <u>truth.   Hence,   the   affidavit   of   a   juror   cannot   be</u> <u>admitted to show anything relating to what passed in the</u> <u>jury room</u> during the investigation of the cause, or the effect of a colloquy between the court and a juror, or the   arguments made to a juror by a   fellow juryman. (Emphasis added.)

The alleged misunderstanding of the jurors in this case does not fit into any of the three exceptions enumerated in Rule 606(b). Use of juror affidavits to prove irregularity or accident under § 25-11-102(1), (3), MCA, as attempted by the Boyds, is clearly improper.  If a motion for a new trial is to be granted, an irregularity or accident in the jury proceedings must exist independent of juror affidavits.  Harry v. Elderkin (1981), 196 Mont. 1, 6, 637 P.2d 809, 812.  The Boyds present no evidence, other than the affidavits, of irregularity or accident allegedly stemming from misunderstanding by the jurors.

The District Court properly denied the Boyds' motion for a new trial based on claims of irregularity or accident supported only by juror affidavits.  We hold plaintiffs are not entitled to a new trial because the District Court rejected the plaintiffs' special verdict form and replaced it with the court's own general verdict form.

II

Are plaintiffs entitled to a new trial because of improper admission of testimony of defendants' expert?

During trial testimony State Medical's expert witness, Dr. Dennis O'Donnell, referred to a report that was done by the Arthur

8

Anderson CPA firm in Seattle, Washington. The report was an evaluation of Montana Medical's assets that had been done by the Arthur Anderson firm for Kalispell General Hospital when the hospital had considered purchasing Montana Medical.

State Medical had deposed Dr. O'Donnell approximately eighteen months prior to trial and at that time Dr. O'Donnell did not have access to the Arthur Anderson report. Thus, the Arthur Anderson report was not listed during discovery as one of the documents on which Dr. O'Donnell based his opinion as to the value of Montana Medical. During trial Dr. O'Donnell referred to the value that Arthur Anderson had placed on Montana Medical to illustrate that his value was comparable to the value arrived at by the Arthur Anderson firm. The Arthur Anderson report was not introduced as an exhibit.

The Boyds allege surprise as grounds for new trial pursuant to § 25-11-102(3), MCA. The Boyds claim that the report was not made available to them through the discovery process, and that they did not have knowledge that Dr. O'Donnell would be using the report in any way during his testimony.

The Boyds argue that under Rule 26(e)(1) and (2), M.R.Civ.P., State Medical had a duty to supplement Dr. O'Donnell's responses to his deposition and reveal that Dr. O'Donnell had obtained access to the Arthur Anderson report subsequent to Dr. O'Donnell's deposition.

Rule 26(e)(1) and (2) provide:

**Rule 26(e). Supplementation of responses.** A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) the identity of each person expected to be called as an expert witness at trial, the <u>subject matter</u> on which he is expected to testify, and the <u>substance</u> of his testimony.

(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (A) he <u>knows that the response was incorrect</u> when made, or (B) he knows that the response though correct when made is <u>no longer true</u> and the circumstances are such that a failure to amend the response is in substance a knowing concealment. (Emphasis added.)

Each of seven criteria enumerated in Ewing v. Esterholt (1984), 210 Mont. 367, 373, 684 P.2d 1053, 1057, must be met before surprise can be the basis of a new trial. The Boyds are unable to establish two of the <u>Ewing</u> criteria which state in pertinent part: the facts from which the surprise resulted had a <u>material bearing</u> on the case, and the <u>result</u> of a new trial <u>will probably be different</u>. (Emphasis added.)

Dr. O'Donnell testified at trial that he had formulated his opinion prior to the time that he received the Arthur Anderson report and that the report did not in any way affect his analysis or conclusion.

Since the Boyds are unable to show that the surprise had a material bearing on the case and that the result of a new trial will probably be different, we hold that the Boyds are not entitled to a new trial because of improper admission of testimony of State

10

Medical's expert.

## III

Are plaintiffs entitled to a new trial because the District Court failed to properly instruct the jury?

The Boyds claim the District Court failed to properly instruct the jury on three different issues of law, namely:

(A) the District Court failed to instruct the jury on termination of power of attorney,

(B) the District Court gave improper warranty instructions to the jury,

(C) the District Court improperly refused plaintiffs' proffered instruction on fraudulent conveyances.

## A

Are plaintiffs entitled to a new trial because the District Court failed to instruct the jury on termination of power of attorney?

The District Court gave plaintiffs' proposed instructions 1 and 2 on power of attorney.

Proposed Instruction No. 1 stated:

> A power of attorney is an instrument in writing by which one person, as principal, appoints another as his agent and confers upon him the authority to perform certain specified acts or kinds of acts on behalf of the principal.

Proposed Instruction No. 2 stated:

> An agent can never have authority, either actual or ostensible, to do an act which is and is known or suspected by the person with whom he deals to be a fraud upon the principal.

Section 28-10-409, MCA.

The court refused to give plaintiffs' proposed instruction No. 5 which stated:

> Unless the power of the agent is coupled with an interest in the subject of the agency, it is terminated as to every person having notice thereof by its revocation by the principal.

Section 28-10-802, MCA.

The court agreed with State Medical that the jury would have no independent understanding of what an "agent coupled with an interest is." For that reason, there was undefined legal terms which rendered the instruction ambiguous or perhaps unintelligible. We agree.

The Boyds argue that the termination of the power of attorney was central to their claim of conversion and that a failure of the court to give an instruction on the termination of power of attorney resulted in the inability of the jury to establish a date of conversion. The Boyds offer the juror affidavits as evidence of their contention. As already discussed under the first issue, juror affidavits may not be used to impeach a jury verdict. No other evidence was presented to indicate that the failure to give the proffered instruction substantially prejudiced the Boyds. In fact the Boyds specifically offered into evidence a document entitled "Termination of Power of Attorney" dated March 2, 1984. The jury did not need to be instructed regarding the power of attorney when they had the actual document in evidence to review.

We hold the District Court did not err in refusing to give

plaintiffs' proffered instruction on termination of power of attorney.

B

Are the plaintiffs entitled to a new trial because the District Court gave improper warranty instructions to the jury?

The District Court gave the three following instructions, offered by State Medical, on warranties:

> No. 25:   One who sells or agrees to sell personal property knowing that the  buyer relies upon his advice or judgment thereby warrants to the  buyer that neither the  seller  nor  any  agent  employed  by  him  in  the transaction  knows the existence of any fact concerning the thing sold which  would, to his knowledge, destroy the buyer's inducement to buy.

Section 30-11-213, MCA.

> No. 26:   A warranty is an engagement by which a seller assures to a buyer the existence of some fact affecting the transaction, whether past, present, or future.

Section 30-11-209, MCA.

> No. 27:   One who sells or agrees to sell personal property as his own thereby warrants that he has a good and unencumbered title thereto.

Section 30-11-211, MCA.

The instructions were taken from Chapter 11 of Title 30 which applies to Sales.   Section 30-11-224, MCA, states:   "This part shall not apply to sales subject to the Uniform Commercial Code." The parties agreed in the Agreement to Purchase that the Uniform Commercial Code - Bulk Transfers, § 30-6-101 et seq., MCA, would apply.

The Uniform Commercial Code deals extensively with warranties

13

in §§ 30-2-312 through -318, MCA.  The giving of Non-Uniform Commercial Code warranty instructions in a Uniform Commercial Code case may be a technical defect, but mere technical defects in the instructions, if considered as a whole, are not grounds for a new trial unless affecting the substantial rights of the party alleging the defect.  State v. DeTienne (1985), 218 Mont. 249, 256, 707 P.2d 534, 538.  The party alleging the defect must show that the instructions were prejudiced before a new trial may be granted.  Flynn v. Siren (1986), 219 Mont. 359, 363, 711 P.2d 1371, 1373.  Where the jury instructions, taken as a whole, state the law applicable to the case, the giving of the instruction is not grounds for a new trial.  Id.

We have compared the challenged instructions with the Uniform Commercial Code warranty statutes and conclude the instructions do not misstate the law.  Absent a misstatement of the law, the Boyds are unable to establish prejudice or interference with their substantial rights.  We hold that the giving of the warranty instructions is not grounds for a new trial.

C

Are the plaintiffs entitled to a new trial because the District Court improperly refused plaintiffs' proffered instruction on fraudulent conveyances?

Plaintiffs' proffered instruction No. 23 stated:

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors is fraudulent as to both present and

14

future creditors.

Before an instruction can be given on fraudulent conveyances, there must be a showing that a conveyance occurred and a showing that the conveyance was intended to defraud the creditors. No such showing was made in this case. A conveyance for the purpose of fraudulent conveyances includes "every payment of money, assignment, release, transfer, lease, mortgage, or pledge of tangible or intangible property and the creation of any lien or encumbrance." Section 31-2-301(2), MCA. The District Court determined that no evidence of a conveyance had been presented and so the instruction was improper. The Boyds argue that the security interest that the Boyds gave to the Small Business Administration (SBA) was a conveyance under the statute and the court had erroneously applied its own definition of conveyance when it stated that a security interest is not a conveyance. It is true that under § 31-2-301(2), MCA, the SBA's security interest is a conveyance. However there was no evidence presented that the giving of the security interest was fraudulent. The Boyds themselves are the ones who gave the security interest to the SBA prior to any involvement with State Medical. The Boyds then gave a security interest to State Medical. This security interest does not in any way affect the SBA's perfected security interest and no evidence was presented to indicate that the giving of a security interest to State Medical was intended to defraud the SBA. The Boyds argue that State Medical took possession of assets owned by Montana Medical with the

15

intent to defraud the SBA of its security interest. The transfer of possession of assets to third parties does not affect the SBA's perfected security interest and there is no evidence that there was any intent to deprive the SBA of its superior position as creditor. We conclude that the plaintiffs have failed to prove a fraudulent conveyance. We hold the court correctly refused to give an instruction on fraudulent conveyances.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

16