No. 92-080

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

ESTATE OF VONNIE D. SPICHER, Deceased, by
and through WAYNE SPICHER, Personal
Representative, WAYNE SPICHER, individually
and as Guardian Ad Litem for MALYNDA KaANN
SPICHER and BRITON EARL SPICHER, Minors,

Plaintiffs and Appellants,

v.

FRANK MILLER, M.D., and HAVRE CLINIC,

Defendants and Respondents.

APPEAL FROM:   District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Frank Altman and Dan Boucher, Altman & Boucher,
Havre, Montana

Diane Fenner, Adler & Kops, Philadelphia,
Pennsylvania

For Respondent:

James Aiken, Jardine Stephenson, Blewett & Weaver,
Great Falls, Montana

Submitted on Briefs:   September 2, 1993

Decided:   October 6, 1993

Filed: OCT 06 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

This is an action for wrongful death and survivorship. A jury in the Twelfth Judicial District, Hill County, returned a verdict for plaintiffs and awarded damages of $302,461. The plaintiffs appeal. We affirm.

The issues are:

1. Did the District Court err in refusing to grant a new trial on grounds of juror misconduct and irregularity in the proceedings?

2. Did the court err in refusing to grant a new trial on grounds that the amount of the verdict was not supported by the evidence?

Vonnie Spicher, age thirty-five, died in the recovery room at Northern Montana Hospital in Havre, Montana, following hysterectomy surgery. She is survived by her husband, Wayne Spicher, and two young children. Defendant Frank Miller, M.D., who was associated with Havre Clinic, performed the surgery. In bringing this action, plaintiffs also named other defendants, who settled prior to trial.

The jury found that Dr. Miller was not negligent but that the nurse anesthetist at surgery was negligent and that Dr. Miller was responsible for the nurse anesthetist's actions. The jury further found that such negligence was a substantial factor causing the death of Vonnie Spicher. It awarded $50,000 as damages to the estate of Vonnie Spicher for lost earnings and services; $2,461 for funeral expenses; $50,000 as damages to Vonnie Spicher's surviving

2

husband and children for lost services from her; $100,000 to the surviving family for lost society, comfort, guidance, education, care, protection and companionship; and $100,000 for the survivors' grief, sorrow, and mental anguish.

Plaintiffs moved for new trial, claiming irregularities in the proceedings and insufficiency of the evidence, under subsections (1) and (6) of § 25-11-102, MCA. They filed affidavits by three jurors stating that, during jury deliberations, certain other jurors expressed opposition to large damage awards and the belief that damages should not be awarded for the death of a person.

The District Court denied the motion for new trial, ruling that the verdict could not be impeached by affidavits. The court also rejected the argument that the amount of the verdict is insufficient under the evidence presented. Plaintiffs appeal.

I

Did the District Court err in refusing to grant a new trial on grounds of juror misconduct and irregularity in the proceedings?

A new trial may be granted on grounds which have materially affected the substantial rights of the aggrieved party. Section 25-11-102, MCA. Our standard of review of a ruling on a motion for new trial is whether the district court abused its discretion. Gass v. Hilson (1990), 240 Mont. 459, 461, 784 P.2d 931, 933.

Plaintiffs contend that three jurors failed to honestly answer material questions on voir dire. Although no transcript was made of voir dire, both parties submitted their versions of that portion

3

of the record to the District Court and the court generated a written summary of what occurred, pursuant to Rule 9(d), M.R.App.P.

During voir dire, plaintiffs' counsel inquired about the prospective jurors' ability to enter a verdict for damages in substantial amounts; specifically, whether they could award damages in excess of one million dollars. Counsel also inquired whether any potential jury member believed that a suit for damages should not be filed or maintained for the loss of a family member. None of the jurors indicated any problems in either area. Yet, argue the plaintiffs, the post-trial juror affidavits prove that not all of the eventual jurors were being truthful during voir dire.

Rule 606(b), M.R.Evid., provides:

Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

However, as an exception to this subdivision, a juror may testify and an affidavit or evidence of any kind be received as to any matter or statement concerning only the following questions, whether occurring during the course of the jury's deliberations or not: (1) whether extraneous prejudicial information was improperly brought to the jury's attention; or (2) whether any outside influence was brought to bear upon any juror; or (3) whether any juror has been induced to assent to any general or special verdict, or finding on any question submitted to them by the court, by a resort to the determination of chance.

4

None of the exceptions listed in the second paragraph of Rule 606(b), M.R.Evid., are present in this case.

This Court has consistently held that under Rule 606(b), M.R.Evid., the use of juror affidavits to impeach a jury verdict is limited to showing external influences on the jury. See, Greytak v. RegO Company (Mont. 1993), 848 P.2d 483, 487, 50 St. Rep. 204, 206-07. The rationale is:

> The rule is . . . for the purpose of preventing litigants or the public from invading the privacy of the jury room, either during the deliberations of the jury or afterward. . . . [I]f after being discharged and mingling with the public, jurors are permitted to impeach verdicts which they have rendered, it would open the door for tampering with jurors and would place it in the power of a dissatisfied or corrupt juror to destroy a verdict to which he had deliberately given his assent under sanction of an oath . . . ..
>
> Testimony of the jurors to impeach their own verdict is excluded not because it is irrelevant to the matter in issue, but because experience has shown that it is more likely to prevent than to promote the discovery of the truth.

76 Am.Jur.2d, Trial, § 1219, as cited in Boyd v. State Medical Oxygen & Supply, Inc. (1990), 246 Mont. 247, 252, 805 P.2d 1282, 1285-86. See also Charlie v. Foos (1972), 160 Mont. 403, 408, 503 P.2d 538, 540-41.

Plaintiffs refer to their right to a fair trial and cite cases from other jurisdictions in which new trials were granted based on false or biased answers by prospective jurors to questions on voir dire. However, some of those cases involved false answers to questions about personal experiences, which are more easily proven

5

than are omissions to state beliefs or opinions held by the juror. See, e.g., Skiles v. Ryder Truck Lines, Inc. (Fla. 1972), 267 So.2d 379, cert. denied 275 So.2d 253. In some of the cases, no rule similar to Rule 606(b), M.R.Evid., was cited. See, e.g., Smith v. Kent (Wash. App. 1974), 523 P.2d 446. Further, Rule 606(b), M.R.Evid., while based on a federal rule of evidence, is unique to Montana.

We hold that the District Court did not abuse its discretion in denying the motion for new trial on grounds of juror misconduct.

II

Did the court err in refusing to grant a new trial on grounds that the amount of the verdict was not supported by the evidence?

The plaintiffs argue that the amounts awarded by the jury as damages for loss of earnings and loss of services cannot be explained based upon the evidence. At trial, they presented the testimony of an expert who calculated the loss of services over Vonnie Spicher's expected lifetime as $422,383 if she remained at home working as a ranch wife and loss of services at $400,458 and loss of earnings at $404,650 if she returned to the outside work force as a teacher after her youngest child reached the age of eighteen.

The defense did not offer an alternative calculation as to the value of the lost earnings and services. However, on cross-examination, the defense elicited testimony from the plaintiffs' expert that his figures were estimates based upon assumptions about

6

the future, made from the information he was given.  The record further discloses that the jury was properly instructed that it was the sole judge of the facts and that it alone was to determine the extent to which any witness should be believed.  The jury was also properly instructed that it was not bound by an expert's opinion, but should give the opinion the weight, if any, to which the jury deemed it entitled.

We hold that the court did not abuse its discretion in refusing to grant a new trial on damages.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

7

October 6, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Frank Altman
Dan Boucher
Altman & Boucher
P.O. Box 268
Havre, MT   59501

Diane Fenner
Adler & Kops
210 W. Washington Square
Philadelphia, PA   19106

James Aiken
Jardine, Stephenseon, Blewett & Weaver
P.O. Box 2269
Great Falls, MT   59403

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
     Deputy