Huebsch v. Pegg
Decided March 10, 1998
(NOT TO BE CITED AS AUTHORITY)

No. 97-447

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 48N

JOANNE HUEBSCH,

Plaintiff and Respondent,

v.

D. RICHARD PEGG and SHORELINE MARINE
CORPORATION, a Washington corporation,

Defendants and Appellants

APPEAL FROM:   District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Thomas S. Winsor and Michael Scott Winsor;

Winsor Law Firm; Helena, Montana

For Respondent:

Gary L. Davis; Luxan & Murfitt, PLLP;

Helena, Montana

Submitted on Briefs: February 5, 1998

Decided:   March 10, 1998

Justice Trieweiler delivered the opinion of the Court.

¶1   Pursuant to Section I, paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2   Joanne Huebsch filed a complaint in the District Court for the First Judicial District in Lewis and Clark County against D. Richard Pegg to recover damages and unpaid wages which she alleged were due based on her former employment relationship with Pegg. After a trial, a jury found in favor of Huebsch.  Pegg moved for a new trial.  The District Court denied the motion.  Pegg appeals from the order denying his motion for new trial and from the judgment of the District Court.  We affirm the District Court.

¶3   Pegg raises six issues on appeal:

¶4   1.   Did the District Court err when it allowed Huebsch to allege breach of the covenant of good faith and fair dealing even though the Wrongful Discharge From Employment Act preempts bad faith claims when related to employment?

¶5   2.   Did the District Court err when it allowed evidence of the parties' affair and other sexual matters even though the claim had not been previously submitted to the Human Rights Commission?

¶6   3.   Did the District Court err when it allowed Huebsch to present evidence of the parties' sexual relationship and Pegg's overall business practices?

¶7   4.   Did the District Court err when it allowed Pegg to

proceed without counsel after the writs of attachment had allegedly rendered him unable to obtain other counsel?

¶8 5. Did the District Court err when it refused to reject the jury's special verdict?

¶9 6. Did the District Court err when it denied the motion for new trial?

## FACTUAL BACKGROUND

¶10 In December 1992, D. Richard Pegg and his Shoreline Marine Corporation purchased Frontier Town, a "resort" property near Helena, which consisted of a bar, restaurant, gift shop, and cabins. Joanne Huebsch, who had worked at Frontier Town since 1967, was retained by Pegg to manage the business. Among other duties, she was responsible for all payroll and accounting.
P11 Pegg was married to Joan Pegg, who lived in Washington state. Shortly after he purchased Frontier Town he began a relationship with Huebsch. Based on Pegg's promises to divorce his wife and marry Huebsch, Huebsch sold her mobile home and moved into his apartment at Frontier Town. Based on her relationship with Pegg, Huebsch began to defer part of her wages in order to help the struggling business. She also occasionally made loans to the business.

¶12 In October 1994, Pegg's wife came to Frontier Town. A confrontation occurred among the parties and Joan allegedly fired Huebsch. Before she left, however, Huebsch demanded a note from Pegg stating that he owed her $30,000, a figure which they had discussed a few weeks before. The note provided that $15,000 be paid within a week and that the remainder be paid in the form of twelve post-dated checks. When Joan left Montana a few days later, Pegg requested that Huebsch come back to live and work at Frontier Town. She agreed to do so. On October 12, 1994, however, he demanded that she surrender the accounting books and affirmed her termination. He wrote a second note confirming the amount that he owed her, and that he had paid her $5,000; at one point in the note he referred to the amount as a loan, but then later, supposedly after Huebsch demanded that he change the language, he described it

as wages.  Pegg paid Huebsch $5,500 before he stopped payment on the remaining checks.

¶13  On August 25, 1995, Huebsch filed a complaint in the District Court to recover the remaining amount owed.  The complaint made four claims: (1) a statutory wage claim, including a claim for attorney fees and costs; (2) a claim for the amount owed pursuant to the notes; (3) a wrongful discharge claim which alleged a special relationship, and included a claim for damages for emotional pain and mental anguish; and (4) an intentional infliction of emotional distress claim in which she sought special and punitive damages.  Pegg denied the allegations and asserted that Huebsch had mismanaged the company's financial responsibilities.

¶14  Huebsch feared that Pegg would sell Frontier Town and leave the state and, therefore, she received from the District Court a writ of attachment against the business.  Due to the financial constraints placed on Pegg as a result of the writ, the District Court later released the writ.  However, upon Huebsch's request, it re-issued the writ on two subsequent dates, with additional terms and conditions to ease the potential burden on Pegg.  After the second writ attached, counsel for Pegg withdrew, and Pegg proceeded pro se through the trial.

¶15  Beginning on February 10, 1997, a four-day jury trial was held.  The District Court made significant attempts to accommodate and assist Pegg during the proceedings; however,  he made very few objections during the trial.  The jury returned a special verdict in which it found that Huebsch was entitled to back wages in the amount of $24,500.  It denied all of her other claims for damages, although it found that Huebsch incurred $1,900 in medical expenses as a result of her discharge.  On March 31, 1997, the District Court issued a judgment against Pegg in the amount of $106,128.44, which included a 110 percent penalty pursuant to Sec. 39-3-206, MCA, interest, and attorney fees and costs pursuant to Sec. 39-3-214, MCA.  By stipulation, the judgment did not include the $1,900 awarded by the jury for medical costs.

¶16  Pegg filed multiple post-trial motions, including motions for

rehearing and a new trial, and to set aside the judgment. On May 15, 1997, the District Court denied the motions.

## ISSUE 1

¶17 Did the District Court err when it allowed Huebsch to allege breach of the covenant of good faith and fair dealing even though the Wrongful Discharge From Employment Act preempts bad faith claims when related to employment?

¶18 Pegg asserts that evidence of the parties' relationship in support of the claim for bad faith should not have been allowed because bad faith is preempted by Sec. 39-2-905(3), MCA, of the Wrongful Discharge From Employment Act. He asserts that he was prejudiced by admission of evidence of his relationship with Huebsch.

¶19 However, when the wrongful discharge claim was submitted to the jury, bad faith was never mentioned. In fact, the special verdict form asked whether Pegg acted with malice toward Huebsch. Malice was a proper issue pursuant to Sec. 39-2-905(2), MCA. Furthermore, the jury ultimately denied the wrongful discharge claim and awarded no damages for that claim, so that any error related to that claim would have been harmless. Accordingly, we conclude that reversible error did not occur as a result of this issue.

## ISSUE 2

¶20 Did the District Court err when it allowed evidence of the parties' affair and other sexual matters even though the claim had not been previously submitted to the Human Rights Commission?

¶21 Pegg asserts that the District Court abused its discretion and denied his substantial rights when it allowed evidence of the parties' relationship. He contends that the matter should first have been brought before the Human Rights Commission, and since it was not, all evidence of the sexual relationship should have been excluded.

¶22 We find no legal or factual basis for his assertion. The only authority he cites in support of his contention is Secs. 49-1-101, et seq., MCA, which refers generally to human rights. Contrary to Pegg's suggestion, however, we decline to hold that anytime a sexual relationship between parties is related to a dispute between the parties, the case becomes a civil rights issue that must first go to the Human Rights Commission. We conclude that the District Court did not err when it admitted evidence of the parties' relationship, even though the matter had not first been presented to the Human Rights Commission.

### ISSUE 3

¶23 Did the District Court err when it allowed Huebsch to present evidence of the parties' sexual relationship and Pegg's overall business practices?

¶24 It is well-established that the District Court has broad discretion to determine whether evidence is relevant and admissible. See Rafanelli v. Dale (1996), 278 Mont. 28, 45, 924 P.2d 242, 253. Absent an abuse of that discretion, we will not overturn the District Court's determination. See Burlingham v. Mintz (1995), 270 Mont. 277, 279, 891 P.2d 527, 529.
P25 Here, Pegg suggests that we apply the doctrine of plain error to conclude that the proceedings were fundamentally unfair as a result of the District Court's admission of this evidence. However, the evidence to which Pegg objects was offered in response to allegations made by Pegg and was relevant to issues he raised. Accordingly, we conclude that the District Court did not abuse its discretion when it admitted the evidence about which Pegg now complains.

### ISSUE 4

¶26 Did the District Court err when it allowed Pegg to proceed without counsel after the writs of attachment had allegedly rendered him to obtain other counsel?

¶27 Pegg's principal contention is that his substantial rights were denied and that the proceedings were fundamentally unfair as

a result of "the improper match-up of a pro se litigant and an experienced competent attorney." Among other things, he also contends that the writs rendered him indigent so as to force him to proceed pro se, and that he was denied his right to counsel.

P28 First, we reject Pegg's implication that it is per se plain error for a district court to allow a party to proceed pro se against an experienced attorney. The District Court advised Pegg of the risk if he proceeded pro se and suggested that he obtain new counsel. However, it is clearly a party's prerogative to represent himself, and the record shows that Pegg believed he was capable and prepared to do so. In addition, the District Court was lenient toward Pegg during the proceedings and allowed him substantial latitude when he questioned witnesses. Finally, a constitutional right to counsel exists only in criminal matters. See Art. II, Sec. 24, Mont. Const.

¶29 We also reject Pegg's contention that the District Court erred when it issued the writs. The record shows that the District Court tailored the writs so as not to unfairly cripple Pegg financially, and that Pegg nonetheless failed at times to comply with the conditions created for his benefit. In addition, the record also shows that Pegg had an income and was neither indigent nor unable to afford counsel as a result of the writs. Even if the writs limited his ability to afford counsel, we refuse to hold here that a plaintiff must defer her recovery and a district court must halt its proceedings until a defendant is able to afford the counsel of his choice. Accordingly, we hold that the District Court did not err when it allowed the trial to proceed while the defendant represented himself.

### ISSUE 5

¶30 Did the District Court err when it refused to reject the jury's special verdict?

¶31 Pegg contends that the special verdict form was deficient on its face because it was unclear which of the four claims the jury would rely on as the basis for an award of medical expenses, and that the District Court abused its discretion when it upheld the special verdict. On that basis, he contends that the verdict was

inconsistent and that it should be reversed. However, Huebsch stipulated that the special verdict form, as it pertained to medical costs, was improper on its face and waived the $1,900 jury award for medical costs. Accordingly, the judgment did not include an award for medical costs, and the error in the special verdict form was of no consequence to the final verdict and award.

¶32 The jury rejected all of Huebsch's claims except for her wage claim. The amount of the award was calculated based on the statute that pertains to wage claims. Upon review of the record, we find evidence to support the jury's findings. Furthermore, we conclude that the portion of the special verdict form on which the jury and the District Court relied to award Huebsch $24,500 is neither unclear nor inconsistent. We therefore hold that the District court did not err when it entered judgment based on the jury's special verdict form.

## ISSUE 6

¶33 Did the District Court err when it denied the motion for new trial?

¶34 The standard of review of a district court_s ruling on a motion for a new trial is whether the court abused its discretion. See Hando v. PPG Industries, Inc. (1995), 272 Mont. 146, 149, 900 P.2d 281, 282. See also Brockie v. Omo Const., Inc. (1994), 268 Mont. 519, 525, 887 P.2d 167, 170; Estate of Spicher v. Miller (1994), 260 Mont. 504, 506, 861 P.2d 183, 184. Pegg contends that he should receive a new trial because a "manifest miscarriage of justice has occurred." For all the reasons stated above, however, we disagree. Accordingly, we conclude that the District Court did not abuse its discretion.

P35 We affirm the judgment of the District Court. Pursuant to Sec. 39-3-214, MCA, Huebsch is entitled to her attorney fees and costs on appeal. Accordingly, we affirm the District Court's award in the amount of $106,128.44, and award Huebsch the additional attorney fees and costs that she has incurred on appeal.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/  J. A.  TURNAGE

/S/  JAMES C. NELSON

/S/  W. WILLIAM LEAPHART

/S/  JIM REGNIER