No. 99-553

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 303

302 Mont. 380

15 P.3d 373

STATE OF MONTANA,

Plaintiff and Appellant,

v..

JASON L. MARKER,

Defendant and Appellant.

APPEAL FROM: District Court of the Fifth Judicial District,

In and for the County of Jefferson,

The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Hon. Joseph P. Mazurek, Attorney General; Helena, Montana

Valerie D. Wilson, Jefferson County Attorney; Boulder, Montana

For Respondent:

J. Mayo Ashley, Attorney at Law Helena, Montana

Submitted on Briefs: October 16, 2000

Decided: December 5, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 A jury found Jason L. Marker (Marker) guilty of aggravated assault by accountability in the Fifth Judicial District Court, Jefferson County. The District Court set aside the verdict and ordered a new trial *sua sponte*. The State of Montana (State) appeals the order. We reverse the order granting a new trial.

¶2 The issues on appeal can be restated as follows:

>   1. Do the time and notice requirements in § 46-16-702(2), MCA, apply to the District Court when it grants a new trial *sua sponte*?

>   2. Did the District Court abuse its discretion by setting aside the verdict and ordering a new trial *sua sponte*?

## FACTUAL BACKGROUND

¶3 The facts relevant to this discussion are as follows: On January 3, 1998, Marker, Jimmy Piazzola (Piazzola), Kevin Anderson, William Arnold (Arnold), Jamie Norris, and Rick Lamb were involved in a bar fight at the Mint Bar in Whitehall, Montana. During the melee, Arnold was severely injured.

¶4 Following an investigation, law enforcement charged Marker and Piazzola with misdemeanor assault and misdemeanor disturbing the peace. The next day, before the county attorney was aware of the severity of Arnold's injuries, Piazzola entered a guilty plea to the misdemeanor charges. Both Marker and Piazzola were charged in District Court with felony assault. In light of Piazzola's prior plea to the misdemeanor charge, the felony charges against him were dismissed on double jeopardy grounds. The State then pursued the felony assault charges against Marker.

¶5 The matter was tried to a jury. At the close of evidence, the trial court instructed the jury on the elements of aggravated assault, assault, and aggravated assault by accountability. Marker objected to the State's verdict form and requested that the verdict specify whether the crimes were misdemeanor or felony offenses. The State did not object to Marker's motion. The judge's secretary typed the new two-page verdict form. The verdict recorded by the court read as follows:

### VERDICT

WE, THE JURY, rend [sic] our verdict in this cause in the manner following:

Aggravated Assault (a felony) GUILTY ___NOT GUILTY ___

-OR-

Aggravated Assault By Accountability GUILTY ___NOT GUILTY ___

Consider only one of the above charges

If you find the Defendant GUILTY as to one of the charges above, you need go no further. If you have reached a verdict on Aggravated Assault, you may proceed to Counts II and III, the misdemeanor counts involving Norris and Lamb.

### ***(Page Break)***

If you find the Defendant NOT GUILTY on the charge of Aggravated Assault, you may consider a lesser offense of Assault, a misdemeanor.

Misdemeanor Assault (Arnold) GUILTY ___NOT GUILTY ___

On the misdemeanor Assault charge (Norris), we find the Defendant:

GUILTY \_\_\_\_NOT GUILTY \_\_\_\_

On the misdemeanor Assault charge (Lamb), we find the Defendant:

GUILTY \_\_\_\_NOT GUILTY \_\_\_\_

¶6 The jury returned their verdict with only a check next to the guilty slot for aggravated assault by accountability. The jury failed to mark either guilty or not guilty on all other charges. Once the verdict was read, the District Court and attorneys for both sides discussed the jury's failure to reach a verdict on the misdemeanor counts contained upon the second page of the verdict sheet.

¶7 On May 19, 1999, the District Court *sua sponte* entered an order setting aside the verdict and granting a new trial. The State appeals from that order.

## DISCUSSIONISSUE 1

¶8 **Do the time and notice requirements in § 46-16-702(2), MCA, apply to the District Court when it grants a new trial** *sua sponte***?**

¶9 The State concedes that the District Court has the power to order a new trial *sua sponte*. The State argues, however, that the District Court abused its discretion in setting aside the jury verdict and ordering a new trial, *sua sponte*, without following the time and notice requirements set forth in § 46-16-702(2), MCA (1997)[1].

¶10 Section 46-16-702, MCA, provides as follows:

> **Motion for new trial. (1) Following a verdict or finding of guilty, the court may grant the defendant a new trial if required in the interest of justice.**
>
> (2) The motion for new trial must be in writing and must specify the grounds for a new trial. The motion must be filed by the defendant within 30 days following a verdict or finding of guilty and be served upon the prosecution.
>
> (3) On hearing the motion for a new trial, if justified by law and the weight of the evidence, the court may:

(a) deny the motion;

(b) grant a new trial; or

(c) modify or change the verdict or finding by finding the defendant guilty of a lesser included offense or finding the defendant not guilty.

¶11 We reject the State's argument that the District Court is bound by the notice and time requirements contained in § 46-16-702(2), MCA. Subsection (2) requires that when a *defendant* files a motion for a new trial, the motion must be filed within 30 days following the verdict or finding of guilt. It has no bearing on how or when a court, *sua sponte*, may grant a new trial under subsection (1). We have held that the subsection (2) requirement that a defendant file a motion when seeking a new trial does not affect the court's inherent power to order a new trial *sua sponte* when required in the interests of justice. State v. Brummer, 1998 MT 11, ¶ 46, 287 Mont. 168, ¶ 46, 953 P.2d 250, ¶ 46. We now hold that the subsection (2) time and notice requirements pertaining to the filing of motions do not apply to a district court acting *sua sponte* under subsection (1).

ISSUE 2

¶12 **Did the District Court abuse its discretion by setting aside the verdict and ordering a new trial *sua sponte*?**

¶ 13 The standard of review for a district court's decision to grant or deny a new trial is whether the court abused its discretion. *Brummer*, ¶ 49. A district court is authorized to grant a new trial *sua sponte* in the interests of justice. *Brummer*, ¶ 35; § 46-16-702(1), MCA. "This authority embodies 'the equitable concept that neither a wronged litigant nor society itself can afford to be without some means to remedy a palpable miscarriage of justice.' " *Brummer*, ¶ 38 (citation omitted).

¶14 The State argues that the jury instructions fully and fairly stated the law and thus the verdict form was correct. Marker counters that the words "you need go no further" confused the jury, as is evidenced by the fact that the jury failed to address the charges contained upon the second page of the verdict form. The District Court agreed with Marker and in its memorandum granting the new trial stated: "After the close of the case, it was brought to the court's attention that the jury believed that they were not to render a decision on Counts II and III, because the verdict form stated they were to 'go no further.'

" The District Court memorandum further stated: "A special post verdict survey completed by the individual jurors confirms this finding." The court concluded that given the ambiguity of the verdict form the only fair response was to order a new trial.

¶15 The record is silent as to how or when the post-verdict survey was conducted by the court. We do not know what questions were asked of which jurors or what responses were elicited. We do know that the jury was not polled pursuant to § 46-16-604, MCA, which allows for polling of the jury at the request of either party or *upon the court's own motion*. Irrespective of the particulars surrounding the post-verdict survey, Rule 606(b), M.R. Evid., prohibits testimony and affidavits of jurors for the purpose of impeaching the jury's verdict.

> Testimony of the jurors to impeach their own verdict is excluded not because it is irrelevant to the matter in issue, but because *experience has shown that it is more likely to prevent than to promote the discovery of the truth. Hence, the affidavit of a juror cannot be admitted to show anything relating to what passed in the jury room* during the investigation of the cause, or the effect of a colloquy between the court and a juror, or the arguments made to a juror by a fellow juryman.

Boyd v. State Medical Oxygen & Supply, Inc. (1990), 246 Mont. 247, 252, 805 P.2d 1282, 1285-86.

¶16 Rule 606(b) recognizes three exceptions to the rule against allowing jurors to impeach their own verdict. The exceptions allow juror affidavits for purposes of showing (1) whether extraneous prejudicial information was improperly brought to the jury's attention; or (2) whether any outside influence was brought to bear upon any juror; or (3) whether any juror has been induced to assent to any general or special verdict, or finding on any question submitted to them by the court, by a resort to the determination of chance. Sandman v. Farmers Ins. Exchange, 1998 MT 286, ¶¶ 27-28, 291 Mont. 456, ¶¶ 27-28, 969 P.2d 277, ¶¶ 27-28, in which we held that the exceptions to Rule 606(b) are exclusive and narrowly construed. Since the District Court did not purport to act pursuant to any of the three exceptions to Rule 606(b), we can only conclude that its reliance on the post-verdict survey violated the clear mandate of that rule.

¶17 We hold that the District Court abused its discretion when, in contravention of Rule 606(b), M.R.Evid., it *sua sponte* granted a new trial based upon its own post-verdict survey of jurors.

¶18 The District Court order vacating Marker's verdict is reversed and his conviction of aggravated assault by accountability, a felony, is hereby reinstated.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

Justice James C. Nelson dissents and concurs.

¶19 I dissent from the Court's decision as to Issue 1. I concur with the Court's decision as to Issue 2 and agree with the result reached.

¶20 I continue to disagree with this Court's decision in *State v. Brummer*, 1998 MT 11, 287 Mont. 168, 953 P.2d 250, for the reasons which I articulated in my dissent in that case. *See Brummer,* ¶¶ 60-75 (Nelson, J., dissenting). I will not reiterate in detail my opposition here other than to note that the majority continues to improperly read language into and out of § 46-16-702, MCA (1997), in total disregard of what the statute actually says.

¶21 Contrary to the discussion in Issue 1, both subsections (2) and (3) of the statute plainly and unambiguously require that a predicate motion for new trial first be filed before the court has any authority to act under subsections (1) and (3). In its entirety, § 46-16-702, MCA (1997), provides:

> **Motion for a new trial.** (1) Following a verdict or finding of guilty, the court may grant the defendant a new trial if required in the interest of justice.
>
> (2) The motion for a new trial must be in writing and must specify the grounds for a new trial. The motion must be filed by the defendant within 30 days following a verdict or finding of guilty and be served upon the prosecution.
>
> (3) On hearing the motion for a new trial, if justified by law and the weight of the evidence, the court may:

> (a) deny the motion;
>
> (b) grant a new trial; or
>
> (c) modify or change the verdict or finding by finding the defendant guilty of a lesser included offense or finding the defendant not guilty.

¶22 Obviously, "The motion" referred to in subsection (2) refers to the "Motion" in the title of the statute. Moreover, if read independently of subsection (1) "The motion" in subsection (2) has no antecedent reference. Likewise, "the motion" referred to in subsection (3) has no antecedent reference apart from subsection (2) and, thus, is, without question, the same "motion" that must be filed within 30 days following the verdict or finding of guilty as required by subsection (2). Read in context, both subsections (2) and (3) refer back to subsection (1). There is no other logical or grammatically correct way to read the three subsections; each is an integral part of the entirety of the statute.

¶23 Indeed, if, as the majority appear to conclude, subsections (1) and (3) apply to the court to the exclusion of the parties, then it still follows that the court may only grant a new trial on the basis of a motion--not *sua sponte*. The predicate for subsection (3) is still "the motion," just as in subsection (2).

¶24 That the majority simply choose to ignore--or read out of the statute--that part of subsection (3) which provides "[o]n hearing the motion," in no way changes the clear, logical and unambiguous language of the statute. This technique does, however, fly in the face of the well-settled principles of our case law governing statutory construction.

¶25 Specifically, these rules require that if the intention of the Legislature can be determined from the plain meaning of the words used, a court may not go further and apply other means of interpretation. In other words, where the statute speaks for itself, there is nothing left for the court to construe. *Curtis v. Dist. Court of 21st Jud. Dist.* (1994), 266 Mont. 231, 235, 879 P.2d 1164, 1166 (citing *State v. Hubbard* (1982), 200 Mont. 106, 111, 649 P.2d 1331, 1333). See also § 1-2-101, MCA (the office of the judge is simply to ascertain and declare what is in terms or in substance contained in the statute, not to insert what has been omitted or to omit what has been inserted, and to give effect to all of the statute's provisions and particulars). Moreover, when interpreting various subsections of a statute or various statutes together we adhere to the canon that:

> In construing a statute, this Court must read and construe each statute as a whole so as to avoid an absurd result and to give effect to the purpose of the statute. Indeed[, s]tatutes do not exist in a vacuum, [but] must be read in relationship to one another to effectuate the intent of the statutes as a whole. This Court will, if possible, construe statutes so as to give effect to all of them. When more than one statute applies to a given situation, such construction, if possible, is to be adopted as will give effect to all.

*Skinner Enterprises v. Board of Health* (1997), 286 Mont. 256, 271-72, 950 P.2d 733, 742 *(internal citations and quotations omitted).*

¶26 The majority opinion in *Brummer* and the majority opinion here as to Issue 1 violate all of these rules of construction. On the other hand, having jumped into interpretational quicksand in *Brummer*, the majority's holding in Issue 1 does not come as much of a surprise.

¶27 My continuing disagreement with *Brummer* notwithstanding, I do note, however, that the 1999 Legislature attempted to accommodate this Court's decision in that case by adding to § 46-16-702(1), MCA, a new last sentence: "A new trial may be ordered by the court without a motion or may be granted after motion and hearing." Of course, this amendment begs the question of why, if the pre-1999 version of the statute already clearly and unambiguously provided the trial courts with that authority, as was decreed by the *Brummer* majority, it subsequently was necessary for the Legislature to textually add what this Court had already said was there. The answer is implicit in the question. *Brummer* was improperly decided. Prior to our decision the Legislature had neither intended nor assumed that § 46-16-702, MCA (1997), provided district courts with the power to *sua sponte* grant new criminal trials. And, following *Brummer*, recognizing that the statute still contained no such textual authority, the Legislature chose to give trial courts that power by adding to the statute the language that this Court previously--albeit improperly--had read into it.

¶28 That aside, the more fundamental--and serious--problem in *Brummer* was recognized by Senator Mike Halligan during the legislative debate on the 1999 amendment. Sen. Halligan "remarked that he would rather have this handled by motion and hearing rather than having judges be activists." *See* Sec. 1, Ch. 301, L. 1999 (SB 416 minutes of Senate Committee on Judiciary) (February 15, 1999). I submit that Sen. Halligan hit the nail on the head. I suggest, however, that the lawmakers unfortunately failed to appreciate the

mischief which trial judges were set free to visit upon criminal jury verdicts under our decision in *Brummer* and, after its amendment, under the revised version of § 46-16-702, MCA.

¶29 In my opinion the law should be changed. Because of *Brummer* and its spawn, there needs to be restored some protection for the finality of and some sense of judicial respect for the sanctity of jury verdicts. It should be and remain the obligation of the defense lawyer--not the trial judge--to represent and advocate for the defendant and to determine, in a timely manner, whether and on what grounds a new trial should be requested. It should be and remain the obligation of the court to dispassionately rule on the merits of a motion for new trial following a hearing in which both sides have notice and an opportunity to present arguments for and against. Trial courts should let the lawyers do the lawyering. Trial courts, under the guise of "inherent authority" should not be allowed, months after the fact, to blind-side either party with *sua sponte* rulings which have no basis in the record, as was the situation in the case *sub judice*.

¶30 The bottom line is this: few, if any, criminal jury verdicts are now safe. Bound by no time limits; without a motion from either party; with no objection by a litigant on the record; without notice and hearing; and with no other standard than the judge's own personal "innate sense of injustice," this State's trial judges may now exercise jurisprudential and statutory authority to discretionarily overturn criminal jury verdicts. The case at bar--wherein the trial court, 7 months after the conclusion of the trial, on the basis of an unlawful private jury survey, and without notice to counsel or hearing, *sua sponte* threw out a lawful jury verdict--demonstrates just how far afield trial courts can and will run with this newly-minted power.

¶31 Given this state of the law, the next Legislature should exercise *its* "discretion" and *its* "inherent authority" to impose, at the very least, some reasonable time limits and notice and hearing requirements on a trial court's ability to order new trials in criminal cases. Better, the Legislature should make it clear statutorily that new trials may be ordered only on the basis of a timely filed and noticed motion from counsel.

¶32 I dissent from our decision as to Issue 1, but concur in our decision as to Issue 2 and as to the result reached in this case.

/S/ JAMES C. NELSON

Justice Karla M. Gray concurs in the foregoing concurrence and dissent.

/S/ KARLA M. GRAY

Justice William E. Hunt, Sr. dissents.

¶33 I dissent from the Court's holding and result based on its determination in the second issue for the reasons stated below.

¶34 The majority declares that the District Court granted a new trial *sua sponte* based upon a special post verdict survey, and in doing so, abused its discretion. The District Court does not state that its decision to grant a new trial *sua sponte* is based upon this survey. Rather, the District Court's memorandum gives many reasons why the jury verdict form confused the jury and why their verdict did not clearly express the jury's intention.

¶ 35 The District Court found that there were "glaring insufficiencies within the verdict form," particularly in the absence of the grade of offense of aggravated assault by accountability. It reasoned that the omission of the grade of offense of aggravated assault by accountability may have inadvertently led the jury to believe that it was the lesser included offense or misdemeanor charge alluded to in its Instruction No. 10.

¶36 Instruction No. 10 clearly stated that Marker was charged with a felony in the verdict form which stated "Aggravated Assault (a felony)." This instruction went on to say "[i]n the event you find the Defendant not guilty . . . you must consider the lesser included offense. . . ." Again the verdict form states "Aggravated Assault (a felony) -OR- Aggravated Assault By Accountability." The District Court reasoned that the jury never saw the lesser included offense contained on the second page of the verdict form.

¶37 The District Court found that credence was given to the argument that the jury was confused by the language on the bottom of the first page of the jury form which said, "you need go no further." The court reasoned that, "obviously this instruction was taken out of context, for it resulted in the jury's failure to even address Counts II and III [both contained on page two]." The District Court pointed out that at trial, the jury informed the bailiff that they had reached a verdict, but did not specify that they were unable to reach a decision on the other counts. The District Court did not believe that the jury simply refused to make a determination on Counts II and III. Instead, the District Court found that the jury was confused by the verdict form.

¶38 The District Court briefly mentioned that a special post verdict survey confirmed its finding that the jury was confused and thus the verdict did not express the jury's intention. The court determined that the language and format of the verdict form were confusing. In addition, the jury failed to completely fill out the verdict form. These incongruities provide more than enough support from the record that the jury was confused. Contrary to the claims of the majority, the District Court's decision was clearly not based solely on this post verdict survey. Rather, the mention of the post verdict survey appears to have served as a further confirmation to the District Court's conclusion that the verdict form was flawed. The District Court found that the insufficient verdict precluded it from intelligibly rendering a judgment. The defective form did not clearly express the jury's intention, and the District Court felt that it could not "correct, remold or reform the verdict" and still do its duty. It decided that the only fair response to these serious procedural flaws was to order a new trial.

¶39 Ultimately, I agree with the District Court that we owe a duty to the defendant to correct what appears to be an injustice to the defendant:

> By way of summary, the Court adds that this case sadly reflects little credit to the system, a fault which many, including the Court, must share. The Defendant is the victim and if the verdict stands he faces revocation of a probationary sentence in Madison County. The probation officer is as distressed as the Court because his client was making remarkable progress. This is not to say that he was blameless. As a probationer, he should not have even been in a bar.

> What bothers the Court and to some extent the prosecution, is that the principal culprit "walked" and will never be held "accountable," at least criminally. In contrast it is Defendant who became "accountable." If he is to be held accountable, it should be in an unflawed proceeding, otherwise justice has not prevailed.

¶40 For the reasons set forth in the Court's holding in issue one, I concur. Regarding issue two, for the reasons set forth above, I dissent.

/S/ WILLIAM E. HUNT, SR.

Justice Terry N. Trieweiler joins in the foregoing dissent.

/S/ TERRY N. TRIEWEILER

1. In 1999 the Montana Legislature amended § 46-16-702(1), MCA, to allow the court to order a new trial either without a motion or after a motion and hearing.