No. 98-289

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 286

LINDA K. SANDMAN,

Plaintiff and Appellant,

vs.

FARMERS INSURANCE EXCHANGE

and KEITH BOOTH,

Defendants and Respondents.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Daniel W. Hileman, Kaufman, Vidal & Hileman, Kalispell, Montana

For Respondent:

Shelton C. Williams, Williams & Ranney, Missoula, Montana

No

Submitted on Briefs: September 17, 1998

Decided: November 24, 1998

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

**¶1. Linda K. Sandman (Sandman) appeals from the February 12, 1998 Order and Rationale of the Eleventh Judicial District Court, Flathead County, denying her various alternative post-trial motions. We affirm.**

## Background

**¶2. Sandman sued her insurer, Farmers Insurance Exchange (Farmers), claiming breach of contract, unfair claims settlement practices, fraud, and negligent infliction of emotional distress in connection with the settlement of her uninsured motorist claims. Following the commencement of litigation, Farmers paid $100,000 policy limits to Sandman who was injured in the underlying automobile accident and, separately, $100,000 policy limits on behalf of her infant son who died as a result of the accident. With Sandman's breach of contract claims settled as a result of Farmers payments to her, she amended her complaint to name Farmers' adjuster, Keith Booth (Booth), as an additional defendant.**

**¶3. The case was tried on Sandman's remaining claims and was submitted to the jury with a special verdict form. Question 5 on this verdict form asked: "Do you find by clear and convincing evidence that Defendants acted either fraudulently and or with malice?" This question was taken nearly verbatim from the special verdict form proposed by Sandman who posed Question 5 as follows: "Do you find by clear and convincing evidence that Defendants engaged in either fraud and/or malice." In retyping Sandman's Question 5, the "/" between the words "and" and "or" was deleted in the form of the question submitted by the court to the jury.[1] Post-trial, Sandman characterized this as a typographical error and argued that it created**

confusion in the minds of the jurors. The record, however, contains no objection by her to the form of Question 5--i.e., without the "/"--at or prior to the time that the verdict form was submitted to the jury by the trial court.

¶4. During deliberations, the jury foreman submitted a question to the court concerning Question 5. The jury's inquiry stated: "Do we have to differencateate [sic] Between [sic] fraud and malice in # 5." Again, the record is void of any discussion between the court and counsel at the time this question was submitted as to if or how this question should be answered. While Sandman argued post-trial that there was discussion that this question should have been answered differently, this discussion is not of record. Rather, what is clear from the record is that, not only did the court respond "No" to the jury question, but also that neither Sandman nor the Defendants registered any contemporaneous objection to this answer.

¶5. The jury returned the special verdict form finding that Booth or Farmers engaged in unfair claims settlement practices; that Booth or Farmers engaged in fraudulent conduct; and that Booth or Farmers did not negligently cause Sandman to suffer emotional distress. The jury awarded total damages of $15,000 as a result of the Defendants' conduct. Finally, to Question 5--"Do you find by clear and convincing evidence that Defendants acted either fraudulently and or with malice?"-- the jury answered "No." When polled by the bailiff, each juror, without comment, equivocation or explanation, stated that he or she had voted "No" on Question 5. The jury was thereafter discharged without objection.

¶6. Subsequently, Sandman filed alternative post-trial motions requesting the court to order that the answer to Question 5 is "Yes"; to set aside the jury verdict on Question 5; and either to enter judgment against Farmers and Booth on the issue of punitive damages as a matter of law or to grant her a new trial on the issue of punitive damages. Sandman based her motion on the affidavits of eight jurors. Each of these identical affidavits stated that, based upon the court's "No" answer to the jury question concerning Question 5, the juror determined that in order to answer "Yes" to Question 5, he or she had to find at least one of the Defendants acted both fraudulently and with malice. Each juror then concluded that because he or she did not find at least one of the Defendants acted both fraudulently and with malice, that the answer to Question 5 was "No."

¶7. In opposing Sandman's motion, Farmers and Booth submitted their own juror

affidavits. Defendants obtained affidavits from five of the eight jurors from whom Sandman obtained affidavits. These affidavits, together with four more, stated, among other things, that the juror would not have awarded punitive damages in this case.

¶8. Following oral argument and briefing, the court denied Sandman's post-trial motions, ruling that the affidavits were not proper as the jury had not been subject to external influences, nor did it resort to chance. Moreover, the court rejected Sandman's substantive arguments on their merits; determined that there was conflicting evidence on the matters that would have supported a discretionary award of punitive damages; and noted that both parties had participated in the formulation of the verdict form and that neither party objected to the court's answer to the jury's question. Sandman timely appealed and the Defendants cross-appealed.

## Issues

¶9. Sandman raises the following issues on appeal:

¶10. 1. Whether the District Court erred in refusing to correct the jury's verdict under Rules 60(a) or (b), M.R.Civ.P.

¶11. 2. Whether the District Court erred in refusing to correct the jury's verdict under Rule 50(b), M.R.Civ.P.

¶12. 3. Whether the District Court erred in refusing to vacate the jury's verdict and order a new trial on either the issue of liability for or the amount of punitive damages pursuant to § 25-11-102, MCA, and Rule 59, M.R.Civ.P.

¶13. By way of cross-appeal, the Defendants raise two issues:

¶14. 1. Whether the District Court erred in allowing Sandman to allege new claims on the eve of trial after the close of discovery.

¶15. 2. Whether the District Court erred in failing to provide for separate findings against the Defendants on the verdict form.

¶16. We affirm issues 1 and 2 on the basis of the threshold issues of waiver and the propriety of the juror affidavits. Accordingly, we decline to address the merits of

those issues. Furthermore, we do not find reversible error as to Sandman's issue 3 and, therefore, affirm as to that issue. Finally, having affirmed the decision of the trial court, we conclude that Defendants' cross-appeal issues are moot, and thus, we do not address those issues.

## Discussion

## I.

¶17. *Whether the District Court erred in refusing to correct the jury's verdict under Rules 60(a), 60(b), or 50(b), M.R.Civ.P.*

¶18. Sandman advances a number of arguments which she contends require the trial court to correct, mold, amend or reform the jury verdict based upon what she perceives to be the jury's mistake in not awarding punitive damages arising out of its alleged confusion over the form of Question 5, the court's "No" answer to the jury's question, and a lack of evidence supporting the jury's refusal to award punitive damages. She cites to the case law of other jurisdictions in arguing that the trial court has plenary authority to correct, mold, amend and reform a jury verdict to reflect the jury's true intent or true decision--which, in this case, she gleans from the eight juror affidavits. Sandman grounds her arguments in the provisions of Rules 60(a), 60(b)(6), and 50(b), M.R.Civ.P. Rule 60(a) allows the court to correct "clerical mistakes"; Rule 60(b)(6) allows the court to relieve a party from final judgment "for any other reason justifying relief from the operation of the judgment"; and Rule 50(b) allows the court to reopen a judgment and enter judgment as a matter of law or grant a new trial. We decline to address the merits of these arguments, however, as two threshold issues--waiver and propriety of the juror affidavits--preclude our further analysis.

## *Waiver*

¶19. As previously noted, Sandman did not contemporaneously object to the special verdict form as submitted to the jury nor is there any record that she contemporaneously objected to the trial court's answer to the jury's question posed during its deliberations. Under these circumstances it would be entirely appropriate that we simply decline further analysis of Sandman's issues 1 and 2 on the basis that she waived her claims of error underlying the issues she now raises on appeal. *See,*

*for example, Wisher v. Higgs* (1993), 257 Mont. 132, 143, 849 P.2d 152, 158, *overruled on other grounds by Blackburn v. Blue Mountain Women's Clinic* (1997), 286 Mont. 60, 951 P.2d 1 (citation omitted) (holding that where no objection is raised to the special verdict form before its submission to the jury, this Court will not review the sufficiency of the form for the first time on appeal). *Accord Greytak v. RegO Co.* (1993), 257 Mont 147, 152, 848 P.2d 483,486. *See also State v. White Clay*, 1998 MT 244, ¶24, ___ P.2d ___, ¶ 24, 55 St. Rep. 1014, ¶ 24 (holding that defendant's claim of error was waived even though raised in a post-trial motion where there was no objection to the court's actions in responding to the statement of the jury foreperson on behalf of another juror and where counsel affirmatively agreed to the court's recommendations regarding how to respond and actively acquiesced in the procedure); *Seder v. Peter Kiewit Sons' Co.* (1971), 156 Mont. 322, 327-28, 332-33, 479 P.2d 448, 450-51, 453 (where, during deliberations and in violation of applicable statutes the court orally answered the jury's written question and orally instructed the jury, the claimed error was waived and, therefore, did not constitute grounds for new trial or appeal because counsel was present, failed to object, and actively participated in the proceedings).

*Propriety of juror affidavits*

¶20. Notwithstanding that Sandman waived her claims of error based upon the special verdict form and upon the court's answer to the jury question, the trial court's decision and the parties' briefs on appeal devote little discussion or analysis to the matter of waiver. Rather, the parties focus primarily on the evidence and on the matter of the juror affidavits and the court's consideration of those. Furthermore, a discussion of and decision on the propriety of the juror affidavits is necessary to our resolution of Sandman's issue 3. Accordingly, we will address this additional threshold issue along with the matter of the court's failure to include the "/" between the words "and" and "or" on the verdict form. We discuss this latter matter first as it is intertwined with the issue of the court's answer to the jury question and the juror affidavits.

A.

¶21. As previously stated, Sandman's proposed Question 5 included a "/" between the words "and" and "or," whereas the court's form of Question 5 did not include the "/". Aside from observing that the use of this much-maligned and overused

conjunctive-disjunctive reflects poor draftsmanship and generally should be avoided, [2] we are, nonetheless, unpersuaded that the use of "and" and "or" with the slash is any more correct or any less confusing than without the slash. According to the legal commentators, when used together with "and," the word "or" usually includes "and" and the "and/or" phrase means "either or both of."[3] Inclusion of the "/" would not have corrected any error, ambiguity or confusion already inherent in the use of the "and" "or" conjunctive-disjunctive.

¶22. The more important point for purposes of our discussion here, however, is that, regardless of it being used correctly or incorrectly in the context of Question 5 and the law applicable to this case, this conjunctive-disjunctive was not only proposed by Sandman herself in her special verdict form but also was not objected to by her in the verdict form used by the court and submitted to the jury.

¶23. The "invited error" rule is well established. "A district court will not be put in error for a ruling or procedure in which the appellant acquiesced or participated, or to which the appellant made no objection." *State ex rel. Ins. Fund v. Berg* (1996), 279 Mont. 161, 174, 927 P.2d 975, 983 (citation omitted). Accordingly, on the procedural posture of this case and the record before us, we decline to find reversible error in the fact that the special verdict form did not contain a "/" between the words "and" and "or" in Question 5. That said, however, our decision on this point should not be read as indicating, implicitly or otherwise, that we approve of the use of the conjunctive-disjunctive "and/or" or "and or" in verdict forms or in jury instructions absent there being some statutory language or other good reason necessitating such use.

B.

¶24. We now turn to the matter of the juror affidavits. For the most part, Sandman's appeal is premised upon consideration of the juror affidavits which she obtained from eight jurors and which she submitted in support of her alternative post-trial motions. As pointed out above, in response to Question 5--"Do you find by clear and convincing evidence that Defendants acted either fraudulently and or with malice?"-- the jury unanimously answered "No." A finding of actual fraud or actual malice is a prerequisite to an award of punitive damages by the fact finder. Section 27-1-221(1), MCA. Accordingly, since the jury answered Question 5 in the negative, Sandman was not entitled to punitive damages.

No

**¶25. It is for this reason that Sandman argues that the jury was confused by the court's "No" answer to the jury's question--"Do we have to differencateate [sic] Between [sic] fraud and malice in # 5"--and urges that, had this question been answered "Yes," the jury, in turn, would have answered "Yes" to Question 5 and would have awarded punitive damages. As noted, she premises this argument on the juror affidavits which she obtained.[(4)]**

**¶26. However, the trial court determined that consideration of the affidavits was not proper as the jury had not been subject to external influences, nor did it resort to chance. Accordingly, if, as the District Court concluded, there was no legal basis on which to consider these affidavits, then the jury's negative response to Question 5 must stand and with that response the consequence that Sandman is not entitled to punitive damages under § 27-1-221, MCA.**

**¶27. In Montana, Rule 606(b), M.R.Evid., bars testimony and affidavits of jurors for the purpose of impeaching their verdict. Specifically, jurors may not testify or present affidavits**

as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

**¶28. This rule, however, recognizes three exceptions. Jurors may testify and offer affidavits concerning only the following questions, whether occurring during the course of the jury's deliberations or not:**

(1) whether extraneous prejudicial information was improperly brought to the jury's attention; or (2) whether any outside influence was brought to bear upon any juror; or (3) whether any juror has been induced to assent to any general or special verdict, or finding on any question submitted to them by the court, by a resort to the determination of chance.

**¶29. The rationale underlying this rule is clear. As we stated in *Boyd v. State Medical Oxygen & Supply, Inc.* (1990), 246 Mont. 247, 252, 805 P.2d 1282, 1285-86:**

The rule is founded on public policy, and is for the purpose of preventing litigants or the

public from *invading the privacy of the jury room, either during the deliberations of the jury or afterward. It is to prevent overzealous litigants and a curious public from prying into deliberations* which are intended to be, and should be, private, frank, and free discussions of the questions under consideration. *Further, if after being discharged and mingling with the public, jurors are permitted to impeach verdicts which they have rendered, it would open the door for tampering with jurors and would place it in the power of a dissatisfied or corrupt juror to destroy a verdict to which he had deliberately given his assent under sanction of an oath.* . . .

Testimony of the jurors to impeach their own verdict is excluded not because it is irrelevant to the matter in issue, but because *experience has shown that it is more likely to prevent than to promote the discovery of the truth. Hence, the affidavit of a juror cannot be admitted to show anything relating to what passed in the jury room* during the investigation of the cause, or the effect of a colloquy between the court and a juror, or the arguments made to a juror by a fellow juryman.

Indeed, with this rationale in mind, we have long held that the exceptions stated in Rule 606(b) "are exclusive, and are narrowly construed." *White Clay,* ¶ 21 (citation omitted).

**¶30. In the case at bar, exceptions (1), extraneous prejudicial information, and (3), resort to chance, are not at issue. Sandman, nevertheless, maintains that the District Court's answer to the jury's question--an answer she now claims was incorrect--constituted an external or outside influence on the jury's deliberations causing confusion and mistake. The trial court ruled otherwise. We agree with the court.**

**¶31. Whether a jury has been subject to internal or external influences is a question of law and we review a district court's conclusions of law to determine whether they are correct. *Berg,* 279 Mont. at 168, 927 P.2d at 979 (citations omitted). We have stated that where external influence is exerted on the jury or where prejudicial information is brought to the jury's attention, juror affidavits can be the basis for overturning the judgment if either party was deprived of a fair trial. On the other hand, juror affidavits may not be used to impeach the verdict based upon internal influences on the jury, such as a mistake of evidence or misapprehension of the law. *McGillen v. Plum Creek Timber Co.,* 1998 MT 193, ¶ 21, 964 P.2d 18, ¶ 21, 55 St.Rep. 808, ¶ 21 (quoting *Harry v. Elderkin* (1981), 196 Mont. 1, 7-8, 637 P.2d 809, 813).**

**¶32. Examples of "external influences" on the jury include a juror's telephone call**

obtaining information with regard to previous litigation by the plaintiff, visiting the scene of an accident, or bringing newspaper articles about the trial into the jury room for the jurors to see. *State v. Brogan* (1995), 272 Mont. 156, 161, 900 P.2d 284, 287 (citation omitted). On the other hand, we have held that the use of juror affidavits submitted to demonstrate jury confusion arising from questions on the verdict form does not fit within the three exceptions enumerated in Rule 606(b), M.R. Evid. Moreover, in the context of § 25-11-102(1), MCA, the statute specifying the grounds for new trial, we have held that the sort of "irregularity in the proceedings" contemplated by this statute "must exist independent of juror affidavits." *Boyd*, 246 Mont. at 253, 805 P.2d at 1286 (citing *Harry*, 196 Mont. at 6, 637 P.2d at 812). Similarly, we have held that juror affidavits do not fall within the external influence exception to the Rule where the jurors state that, because they misunderstood the jury instructions, the verdict had an "unintended effect." *Greytak,* 257 Mont at 153, 848 P.2d at 487.

¶33. Notwithstanding, Sandman argues that the District Court's answer to the jury's question was an external influence that caused the jury to answer Question 5 "No." We decline to adopt this argument for two reasons. First, Sandman cites no competent authority for the proposition that the trial judge's answer to a jury question may constitute an improper external influence on the jury within the meaning of exception (2) to Rule 606(b), M.R.Evid. As to this point, we have made it clear on numerous occasions that we will not address an argument for which no supporting authority is cited. *See, for example, Rieman v. Anderson* (1997), 282 Mont. 139, 147, 935 P.2d 1122, 1126-27; Rule 23(a)(4), M.R.App.P. Second, we recently rejected a similar argument in *White Clay*, wherein we observed that "[n]o language in the Rule provides for--or would support--a 'judge as external influence' exception to the general prohibition contained in Rule 606(b), M.R.Evid." *White Clay*, ¶ 21.

¶34. Accordingly, since Sandman's affidavits do not show that an external or, in the words of the Rule, an "outside" influence was brought to bear upon the jurors, we hold that the jurors' affidavits could not be used to impeach their verdict in the case at bar. The jury's answer to Question 5 must stand. The trial court properly refused Sandman's motion to order that the answer to Question 5 is "Yes" or to otherwise "correct," "mold," or set aside the verdict on the basis of her perception that the jury actually intended to award punitive damages, but did not do so because it was confused and mistaken.

## II.

¶35. *Whether the District Court erred in refusing to vacate the jury's verdict and order a new trial on either the issue of liability for or the amount of punitive damages pursuant to § 25-11-102, MCA, and Rule 59, M.R.Civ.P.*

¶36. Sandman also maintains that, pursuant to § 25-11-102, MCA, and Rule 59, M.R. Civ.P., she was entitled to a new trial solely on the amount of punitive damages or, alternatively, on the liability for and amount of punitive damages. She cites the statutory grounds for new trial at § 25-11-102(1), MCA, irregularity in the proceedings, and at § 25-11-102(6), MCA, insufficiency of evidence, for this proposition.

¶37. With regard to subsection (1), Sandman argues that the above-discussed exclusion of the "/" in Question 5 combined with the court's answer to the jury question caused a prejudicial irregularity in the proceedings. We disagree and, having already thoroughly addressed both of these claimed errors, we decline to discuss this argument further. For the reasons aforestated, we find no reversible error in the trial court's refusal to vacate the jury's verdict and order a new trial on the basis of § 25-11-102(1), MCA, irregularity in the proceedings.

¶38. As to subsection (6) of the statute--sufficiency of the evidence supporting the jury's negative answer to Question 5--we conclude that Sandman's argument must fail. At the outset, we note that all elements of a claim for punitive damages must be proved by clear and convincing evidence--i.e., evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence and of which there is more than a preponderance but less than a reasonable doubt. Section 27-1-221(5), MCA. *See also Cartwright v. Equitable Life Assur.* (1996), 276 Mont. 1, 27-28, 914 P.2d 976, 992-93. In this case, according to Question 5 on the special verdict form, the jury did not "find by clear and convincing evidence that Defendants acted either fraudulently and or with malice." As stated above, there is no procedural reason on the record of this case that this finding should be vacated or disregarded. Accordingly, without more, the jury having failed to make the prerequisite finding of actual fraud or actual malice required by § 27-1-221(1), MCA, Sandman's claim for punitive damages must fail.

¶39. Sandman contends, however, that there is no substantial evidence supporting

this finding. In this regard, and notwithstanding that a plaintiff's burden of proof for punitive damages is "clear and convincing," we review a jury's verdict to award punitive damages to determine whether there was substantial evidence supporting the verdict. *Cartwright*, 276 Mont. at 28, 914 P.2d at 993. It follows, therefore, that we will review a jury's verdict not to award punitive damages under the same substantial evidence standard.

¶40. We described in greater detail our standard of review of jury verdicts in *Kneeland v. Luzenac America, Inc.*, 1998 MT 136, ¶ 45, 961 P.2d 725, ¶ 45, 55 St.Rep. 541, ¶ 45 (citations omitted). There we stated:

Our scope of review of jury verdicts is necessarily very limited. This Court will not reverse a jury verdict which is supported by substantial credible evidence. This Court has defined substantial credible evidence as evidence which a reasonable mind might accept as adequate to support a conclusion. The evidence may be inherently weak and conflicting, yet it may still be considered substantial. It is well established that if the evidence is conflicting, it is within the province of the jury to determine the weight and credibility to be afforded the evidence. Finally, upon reviewing a jury verdict to determine if substantial credible evidence exists to support the verdict, this Court must view the evidence in the light most favorable to the prevailing party.

¶41. Moreover, in our review of jury verdicts in civil cases, we have stated that the prevailing party is entitled to any reasonable inference that can be drawn from the facts which are proven, *Cartwright*, 276 Mont at 33, 914 P.2d at 996 (citations omitted); that we do not decide whether the verdict was correct or whether the jury made the right decision, *Wise v. Ford Motor Co.* (1997), 284 Mont. 336, 343, 943 P.2d 1310, 1314; that we will not lightly overturn the verdict of a finder of fact, especially a jury, *Palmer by Diacon v. Farmers Ins. Exchange* (1988), 233 Mont. 515, 519-20, 761 P.2d 401, 404; that we will not disturb the jury's findings unless they are inherently impossible to believe, *Wise,* 284 Mont. at 339, 943 P.2d at 1312; that the test of substantial credible evidence allows for reversal only if there is an absence of probative facts to support the verdict, *Kleinsasser v. Superior Derrick Service, Inc.* (1985), 218 Mont. 371, 374, 708 P.2d 568, 570; that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance," *Barrett v. Asarco Inc.* (1990), 245 Mont. 196, 200, 799 P.2d 1078, 1080; and, that in order to rise to the level of substantial evidence, the evidence must be greater than trifling or frivolous, *C. Haydon Ltd. v. MT Min. Properties, Inc.*

**(1997), 286 Mont. 138, 151, 951 P.2d 46, 54.**

**¶42. With these legal principles and standards of review in mind, our examination of the record leads us to the same conclusion as that of the District Court. We determine that there was ample conflicting evidence as to whether the Defendants made false representations, concealed material facts, intended to injure Sandman, or acted with actual fraud or actual malice as those terms are defined by § 27-1-221(2) and (3), MCA.**

**¶43. Sandman testified that in her February 16, 1996 conversation with Booth, he told her that he had been authorized to offer her the policy limits of $100,000 on her claim, but that he did not have policy limits authority on her son's claim. She further testified that Booth told her he could pay up to $50,000 on her son's claim, but that he could arrange for a structured settlement whereby she would be paid $100,000 over time. Sandman contended that this was evidence of misrepresentation and fraud on Booth's part because he did in fact have policy limits authority on both claims at the time of that conversation.**

**¶44. Booth's testimony at trial directly contradicted Sandman's testimony. He denied telling Sandman that he did not have policy limits authority on her son's claim or that Farmers would only offer $50,000 on that claim. Booth testified that he did tell Sandman that he had the authority to settle her claim for $100,000 and that he had the authority to settle her son's claim, however, he testified that he did not mention a specific dollar amount on the son's claim.**

Q. [by Defendants' counsel] And what did you tell her and what did she ask regarding the values of the claims?

A. [Booth] She asked me very-- She asked me what authority I had to settle the claims and I-- I was very careful because I wanted to make sure that she understood that I had the authority to settle the claims and that is why it was important for me to meet with her directly.

Q. She wanted to know what your dollar amount was?

A. That's correct.

No

Q. And what did you tell her when she asked you that question?

A. Well, I told her that I had the authority-- I never disclose my authority to settle claims. It is my job to negotiate a settlement, and I just don't disclose it if it is going to be negotiated. At that time she asked me several times what my authority was, and I told her I had the authority to settle her claims.

Q. Did you ever at any time in that conversation or any other conversation tell her that you did not have policy limits authority on Ross Sandman's claim?

A. Absolutely not. Absolutely not.

Q. Are you sure?

A. I am very, very sure.

**¶45. It is uniquely the jury's task to weigh and resolve conflicts in the evidence, to judge the credibility of the witnesses, and to find the facts.** *Durden v. Hydro Flame Corp.,* **1998 MT 47, ¶ 36, 955 P.2d 160, ¶ 36, 55 St.Rep. 198, ¶ 36. The jury performed this task in the case** *sub judice* **and its decision must be upheld. We hold that the jury's verdict to not award punitive damages is supported by substantial evidence.**

**¶46. Finally, we address Sandman's argument that the uncontradicted evidence entitled her either to an award of punitive damages as a matter of law or, at least, a new trial on this issue. We disagree for three reasons. First, as we have pointed out above, the evidence that would have supported an award of punitive damages was contradicted and the jury's decision to not award punitive damages is supported by substantial evidence.**

[T]he trial court properly grants a motion for judgment as a matter of law only where there is a *complete absence* of any credible evidence in support of the verdict. If there is *any evidence* in support of the verdict and if the party opposing the motion can recover on *any* view of the evidence and legitimate inferences, then the court must exercise self-restraint, credit the constitutionally mandated process of jury decision, and deny the motion.

*Durden, ¶ 23.*

**¶47. Second, it is undisputed that the jury found, necessarily by a preponderance of**

the evidence, that "Booth or Farmers . . . engage[d] in unfair claims settlement practices" (special verdict form Question 1) and that "Booth or Farmers . . . engage [d] in fraudulent conduct" (special verdict form Question 2). On these findings the jury awarded compensatory damages for Sandman's unfair claims settlement practices and fraud claims. It is equally clear, however, that the jury, to a person, declined to find "by clear and convincing evidence that Defendants acted either fraudulently and or with malice" (special verdict form Question 5)--the prerequisite finding for an award of punitive damages. Sandman's contention that a finding of fraud automatically supports an award of punitive damages as a matter of law ignores the fact that two different burdens of proof are involved. A preponderance of the evidence is necessary to establish the nine elements of fraud, *Pare v. Morrison* (1990), 241 Mont. 218, 221, 786 P.2d 655, 657, while clear and convincing evidence is required to prove all elements for a claim of punitive damages, § 27-1-221(5), MCA, and *Cartwright*, 276 Mont. at 28, 914 P.2d at 993. It is within the province of the jury to find, as it did here, that there is sufficient evidence of proof of fraud, but yet not the quantum of evidence necessary to support an award of punitive damages.

¶48. Third, we have made it clear that the district court's role with regard to punitive damages in a case tried to a jury is limited. We stated in *DeBruycker v. Guaranty Nat. Ins. Co.* (1994), 266 Mont. 294, 300, 880 P.2d 819, 822:

[T]he District Court [is] bound by the jury's determination of facts on all issues which had been presented to the jury. Section 27-1-221(7)(c), MCA, only empowers the court to evaluate the amount of the award of punitive damages in light of the factors enumerated under subsection (7)(b), and to make findings of fact and conclusions of law as to its reasons for increasing, decreasing, or letting stand the amount of the punitive damages award. *It does not open the door for reversal of jury findings on underlying issues of liability.* [Emphasis added.]

In this regard, § 27-1-221(6), MCA, squarely commits the decision to award or not to award punitive damages to the fact finder. Indeed, in *Maulding v. Hardman* (1993), 257 Mont. 18, 26-27, 847 P.2d 292, 298 (citing *Davis v. Sheriff* (1988), 234 Mont. 126, 133, 762 P.2d 221, 226), we stated that "[n]o plaintiff is ever entitled to exemplary damages as a matter of right, regardless of the situation or the sufficiency of the facts." *See also Cartwright*, 276 Mont. at 44, 914 P.2d at 1002 ("it is the jury which must first determine whether punitive damages are recoverable . . . To hold that the district court has complete and unbridled discretion to ignore the jury's award would mean that the function assigned

to the jury in this process is meaningless").

¶49. Thus, in the face of the record here and above-cited statutory and case authority, Sandman's conclusion that the District Court could and should have granted her motion to vacate the jury's finding of no liability for punitive damages and that the court could and should have ordered a judgment for punitive damages as a matter of law, is without merit.

¶50. Finally, the general rule is that a decision to grant a new trial is committed to the sound discretion of the trial judge and will not be disturbed absent a showing of manifest abuse of that discretion. *Jim's Excavating Service v. HKM Assoc.* (1994), 265 Mont. 494, 512, 878 P.2d 248, 259. For the reasons already discussed, we find no manifest abuse of the court's discretion in its refusal to order a new trial as to punitive damages.

¶51. Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

1. [1]Other changes in the court's special verdict form from that proposed by Sandman are not at issue. It should be noted, however, that the questions asked and their arrangement on the court's verdict form were virtually the same as those on the verdict form proposed by Sandman.

2. [2] *See* Bryan A. Garner, *The Elements of Legal Style* 31, 102-03 (1991); Bryan A. Garner, *A Dictionary of Modern Legal Usage* 56-57 (2d ed. 1995).

3. [3] Id.; *Black's Law Dictionary* 86 (6th ed. 1990).

4. [4]Farmers and Booth obtained countervailing affidavits which demonstrated that the jurors would not have

awarded punitive damages. We do not base our decision on this issue on the Defendants' juror affidavits, however. For the reasons set forth in our opinion, it is no more permissible that the trial court or this Court allow rehabilitation of the jury verdict on the basis of affidavits violating Rule 606(b), M.R.Evid., than it is to allow the verdict to be impeached by use of such affidavits in the first place.