No. 02-074

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 243N

IN RE THE MARRIAGE OF
SHARON K. SNELL,

                Petitioner and Appellant,

        and

ROBERT S. SNELL,

                Respondent and Respondent.

APPEAL FROM:     District Court of the Eleventh Judicial District,
                 In and for the County of Flathead,
                 The Honorable Stewart E. Stadler, Judge presiding.

COUNSEL OF RECORD:

            For Appellant:

                Peter F. Carroll, Attorney at Law, Kalispell, Montana

            For Respondent:

                Erika L. Johnson; Johnson, Berg, McEvoy & Bostock,
                Kalispell, Montana

                                    Submitted on Briefs:  May 16, 2002

                                        Decided:  November 7, 2002

Filed:

        _____
                            Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1   Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2   Sharon K. Snell (Sharon) appeals from the judgment entered by the Eleventh Judicial District Court, Flathead County, on its findings of fact, conclusions of law and decree of dissolution.  We affirm.

¶3   Sharon raises the following issues:

¶4   1.  Did the District Court abuse its discretion in accepting David Heine's appraisal of the 3-acre Creston Farm homestead into evidence?

¶5   2.  Did the District Court abuse its discretion in valuing and distributing the marital estate?

¶6   3.  Did the District Court err in failing to award Sharon maintenance?

BACKGROUND

¶7   Sharon and Robert S. Snell (Robert) were married on July 25, 1967.  In April of 1999, Sharon petitioned the District Court to dissolve the marriage and equitably apportion the marital estate between the parties.  She also requested that Robert pay her maintenance.  The District Court held a trial in May of 2001,

2

following which it entered findings of fact, conclusions of law and a decree dissolving the marriage and distributing the parties' marital estate. As the court stated in its findings of fact, the marital estate in this case consists mainly of four parcels of land acquired by the parties during their marriage and referred to in this proceeding as the Creston Farm, the Isch property, the Lake Blaine property and the Snell Home Place.

¶8 The Creston Farm consists of approximately 200 acres of farmland with a house and several outbuildings. James Kelley (Kelley), a certified land appraiser hired by the parties to appraise the various parcels of land, valued the Creston Farm at $740,000. A second appraisal, conducted by David Heine (Heine) at the request of Robert, valued a 3-acre tract containing the house and outbuildings within the Creston Farm at between $60,000 and $75,000. The District Court allocated 40 acres of the Creston Farm, plus the 3-acre tract with house and outbuildings, to Sharon and the remaining 157 acres to Robert.

¶9 The Isch property consists of 70.26 acres of farmland valued by Kelley at $259,962. At the time of the trial, the debt on this property was $105,599. The debt is secured by a Merrill Lynch account which the District Court valued at an amount approximately equal to the debt. The District Court distributed both the property and the Merrill Lynch account to Sharon. The court also distributed the Lake Blaine property, consisting of 5 acres of residential property valued by Kelley at $276,000, to Sharon.

3

¶10 The final parcel, referred to as the Snell Home Place, consists of 174.53 acres of farmland. Kelley valued 37.48 acres of this property, containing a residence and some outbuildings, at $163,000. He further determined that the highest and best use of the remaining acreage is as residential subdivision and valued it at approximately $900,000. The District Court allocated the 37.48 acres with buildings to Robert. The court divided the remaining acreage between the parties, with Robert receiving 68.55 acres and Sharon receiving 68.5 acres.

¶11 In addition to the above real property distributions, the District Court valued and allocated the parties' other assets and debts. Robert received a net distribution equaling $1,088,504 and Sharon received a net distribution of $1,133,078. The court also specifically noted that Sharon was receiving a greater proportion of the marital estate in lieu of a maintenance award. Sharon subsequently moved to amend the decree or, alternatively, for a new trial, asserting that various of the District Court's findings of fact relating to the valuation and distribution of the marital estate were erroneous. The court denied the motion and entered judgment on the decree. Sharon appeals.

DISCUSSION

¶12 1. Did the District Court abuse its discretion in accepting Heine's appraisal of the 3-acre Creston Farm homestead into evidence?

¶13 Prior to the trial in this matter, the parties signed, and filed with the District Court, a stipulation stating that Kelley would perform the appraisals of all the real property of the

4

marital estate and no additional or alternative appraisals would be performed. At trial, Robert offered into evidence Heine's appraisal valuing the home, outbuildings and 3-acre tract within the Creston Farm property at $65,000. Sharon objected to the exhibit on the basis that it violated the pretrial stipulation. The District Court allowed the exhibit into evidence and Sharon asserts error. We review a district court's evidentiary rulings to determine whether the court abused its discretion. In re Marriage of Craib (1994), 266 Mont. 483, 499, 880 P.2d 1379, 1389.

¶14 Sharon contends that the District Court's admission of the Heine appraisal was error affecting her substantial rights because her "trial counsel was caught unprepared by the proffer of such testimony." Our review of the record, however, shows that Sharon's counsel was aware of the appraisal prior to trial and had prepared to respond to it. During direct examination of Kelley, Sharon's counsel said someone had indicated to him that the 3-acre parcel was worth $65,000 and asked what response Kelley had to that valuation. Kelley then testified that he believed the 3-acre tract would be worth up to $50,000. Moreover, Sharon testified that if there was a legitimate offer to purchase the 3-acre tract for $65,000, she would be willing to value the tract at that amount. All of this testimony occurred prior to Robert offering the Heine appraisal into evidence, thus contradicting Sharon's assertion that her counsel was unaware of, and unprepared for, the Heine appraisal.

¶15 Moreover, the District Court accepted the Heine appraisal into evidence on the basis that it had already heard the testimony set forth above. In other words, Sharon opened the door for Robert to present evidence regarding the value of the 3-acre tract. Based on the record before us, we hold that the District Court did not abuse its discretion in accepting Heine's appraisal of the 3-acre Creston Farm homestead into evidence.

¶16 2. Did the District Court abuse its discretion in valuing and distributing the marital estate?

¶17 We review a district court's division of marital property to determine whether the court's findings of fact are clearly erroneous and its conclusions of law correct. Siefke v. Siefke, 2000 MT 281, ¶ 7, 302 Mont. 167, ¶ 7, 13 P.3d 937, ¶ 7; In re Marriage of Gochanour, 2000 MT 156, ¶ 15, 300 Mont. 155, ¶ 15, 4 P.3d 643, ¶ 15. If the court's findings are not clearly erroneous, we will affirm a property distribution absent a showing that the court abused its discretion. Siefke, ¶ 7; Marriage of Gochanour, ¶ 15. Moreover, a presumption exists in favor of a district court's determinations regarding the valuation and distribution of marital property and those determinations are accorded a great amount of deference on review. Marriage of Gochanour, ¶ 34. Finally, a district court "has the discretion to adopt any reasonable valuation of property supported by the record." Siefke, ¶ 20 (citation omitted).

¶18 Sharon argues the District Court's findings of fact regarding the value of certain assets in the marital estate are clearly erroneous and, consequently, the court's ultimate property

distribution--based on these erroneous findings--was an abuse of discretion.  She first contends that the District Court erred in relying on a balance sheet prepared at Robert's request by certified public accountant Ken Armstrong (Armstrong) to determine the value of certain marital property because the balance sheet was hearsay evidence and, therefore, the validity of the figures therein was questionable.

¶19 During Sharon's testimony, she offered as an exhibit a document outlining her proposed valuation and distribution of the marital estate.  At the same time, she offered Armstrong's balance sheet as an exhibit as the source for some of the values assigned to assets on her proposed distribution exhibit.  Robert objected to admission of the Armstrong balance sheet on the basis that it was both hearsay and inaccurate.  In response, Sharon's attorney specifically argued that the Armstrong balance sheet was not hearsay because it constituted an admission against interest by Robert.

¶20  A party may not change its legal theory or raise new arguments on appeal.  Milltown Add. Homeowner's Ass'n v. Geery, 2000 MT 341, ¶ 18, 303 Mont. 195, ¶ 18, 15 P.3d 458, ¶ 18.  Moreover, we will not reverse a district court for error in which the appellant acquiesced or participated.  Sandman v. Farmers Ins. Exchange, 1998 MT 286, ¶ 23, 291 Mont. 456, ¶ 23, 969 P.2d 277, ¶ 23.  Because Sharon argued below that the Armstrong balance sheet was not hearsay, she is precluded from arguing here that the District Court should not have relied on the exhibit because it was hearsay.  We

7

conclude, therefore, that the District Court's valuation of certain assets based on the Armstrong balance sheet is not clearly erroneous.

¶21 Sharon next argues that the District Court's valuation of the Merrill Lynch account securing the debt owed against the Isch property at $104,151 based on figures from the Armstrong balance sheet is clearly erroneous because the validity of the balance sheet figures is questionable. She contends that the District Court should have adopted the lower value of $80,509 placed on the account by Robert. Again, however, Sharon herself offered the Armstrong balance sheet into evidence and, indeed, her proposed property valuation and distribution exhibit values the Merrill Lynch account in accordance with Armstrong's balance sheet. Having requested the District Court to value the account in accordance with the Armstrong balance sheet, Sharon cannot now argue that the court was in error for doing so. We conclude the District Court's finding of fact valuing the Merrill Lynch account at $104,151 is not clearly erroneous.

¶22 Sharon also argues that the District Court's finding of fact valuing the parties' farm equipment at $78,625 is clearly erroneous. She contends that the more accurate value of the farm equipment is $165,000, as reflected in a Farm Credit Services report she prepared for the parties in 1998. Robert testified, however, that he met with a loan officer from the Farm Credit Services in 1999 and, with the loan officer's assistance,

8

determined that the value of the farm equipment was approximately $78,000. The District Court found that

> [w]hile there were introduced equipment inventories suggesting a higher value, those inventories were prepared by [Sharon] during the times she controlled the farm records. Following the parties' separation, [Robert] met and cooperated with a Farm Credit Services officer to accurately inventory and value the equipment. The Court finds the value of the farm equipment to be $78,625.00.

¶23 As stated above, a district court "has the discretion to adopt any reasonable valuation of property supported by the record." Siefke, ¶ 20 (citation omitted). Moreover, determinations regarding the valuation of marital property are presumptively correct and accorded a great amount of deference on review. Marriage of Gochanour, ¶ 34. We conclude the District Court's finding of fact valuing the farm equipment at $78,625 is supported by the record and, therefore, is not clearly erroneous.

¶24 Sharon next argues that the District Court's finding of fact valuing the Lake Blaine property at $276,000 is clearly erroneous because the court failed to adjust the value to reflect tax consequences which would result from the sale of the property. She contends that, at the time the parties separated, they agreed the Lake Blaine property eventually would be sold and that the court's property distribution requires her to sell real property--namely the Lake Blaine property--in order to have adequate income on which to live. However, Sharon testified at the trial that, depending on the final property distribution, there may be no need to sell the Lake Blaine property. This testimony contradicts her assertion here that it was assumed the property would be sold. Moreover, as

9

the District Court observed in its order denying Sharon's posttrial motion to amend the decree, "[t]he Lake Blaine property allocated to [Sharon] could be used to acquire a home or additional farm acreage without tax consequences . . . ."

¶25 Tax liability should be considered by the district court only where the court's property distribution includes a taxable event resulting in a concrete and immediate tax liability. In re Marriage of Lee (1991), 249 Mont. 516, 519, 816 P.2d 1076, 1078. Based on the record before us, we conclude that potential tax consequences related to the Lake Blaine property were neither concrete nor immediate at the time the District Court entered its decree. Consequently, we further conclude that the court's finding of fact valuing the property at $276,000 is not clearly erroneous.

¶26 Finally, Sharon argues that the District Court's finding of fact 15 is clearly erroneous. That finding states as follows:

> During the period of separation, [Sharon] claims that [Robert] has retained all of the family farm income. [Robert] claims that for a period of time during the parties separation that [Sharon] maintained the farm bank accounts and excessively dissipated these accounts. Giving credibility to both claims, results in the Court finding that there has been an approximately equal distribution of post separation farm income.

Sharon's argument that this finding is erroneous is based, essentially, on her assertion that her testimony regarding the parties' use of marital assets during the post-separation period was more credible than Robert's. However, we must give due regard to the trial court's opportunity to judge the credibility of witnesses and will not substitute our judgment for that of the trial court on those matters. In re Marriage of Oehlke, 2002 MT

10

79, ¶ 21, 309 Mont. 254, ¶ 21, 46 P.3d 49, ¶ 21. We conclude Sharon has failed to establish that the District Court's finding of fact 15 is clearly erroneous.

¶27 Having concluded that the challenged findings of fact are not clearly erroneous, we hold that the District Court did not abuse its discretion in valuing and distributing the marital estate.

¶28 3. Did the District Court err in failing to award Sharon maintenance?

¶29 In her petition for dissolution, Sharon requested that Robert pay her maintenance. At trial, however, Sharon testified that she would be willing to forego a maintenance award if the court awarded her sufficient property in lieu thereof. In the final decree, the court awarded Sharon a net property distribution which was $44,574 greater than that awarded Robert and specifically stated that

> [t]he disproportionate allocation of the marital estate is in lieu of maintenance and considering [Robert's] greater earning capacity which equalizes when [Sharon] obtains her anticipated additional education. Said distribution provides [Sharon] with sufficient assets when considered with income available to provide for her continued education and reasonable needs. There is no evidence that either will be unable to meet their reasonable financial needs, so spousal maintenance is not appropriate.

¶30 In a dissolution proceeding, a district court may grant a spouse maintenance if the court finds that the spouse lacks sufficient property to provide for his or her reasonable needs and is unable to support him/herself through appropriate employment. Section 40-4-203(1), MCA. A court may, in its discretion, allocate property in lieu of maintenance. Section 40-4-203(2)(a), MCA. Finally, we review a court's grant or denial of a maintenance award

11

to determine whether the court's underlying findings of fact are clearly erroneous. In re Marriage of Haines, 2002 MT 182, ¶ 15, 311 Mont. 70, ¶ 15, 53 P.3d 378, ¶ 15.

¶31 Sharon argues that the District Court's finding that it awarded sufficient property in lieu of maintenance to provide for her reasonable needs is clearly erroneous. Her argument is based on her assertion that none of the property she received was income-producing. She first contends that, although the court awarded her farm property which potentially could be income-producing, it failed to award her any of the farm equipment with which to produce such income. The District Court awarded all the farm equipment to Robert, finding that, although Sharon stated a desire to farm, it questioned the legitimacy of that desire based on her failure to avail herself of previous opportunities to farm during the parties' marriage. Based on the record before us, we conclude that sufficient evidence exists to support this finding and it is not clearly erroneous.

¶32 Sharon further asserts, however, that the District Court's failure to award her any equipment with which to farm results in her being required to sell some of her property in order to meet her needs. Consequently, according to Sharon, she will suffer adverse tax liabilities and the loss of some of her property, thus making the court's property award in lieu of maintenance insufficient. As noted above, however, the District Court found that the sale of any property awarded to Sharon would not necessarily result in adverse tax consequences, and we conclude

12

that Sharon has not established that this finding is clearly erroneous.  We hold, therefore, that the District Court did not err in failing to award Sharon maintenance.

¶33  Affirmed.


                                        /S/ KARLA M. GRAY


We concur:

/S/ PATRICIA COTTER
/S/ TERRY N. TRIEWEILER
/S/ TERRY N. TRIEWEILER
/S/ JAMES C. NELSON