

DA 12-0088

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 286N

DAVID KAESTNER, CESAR HERNANDEZ,
and COLLEEN HINDS-HERNANDEZ,

      Plaintiffs and Appellants,

  v.

MIKE and NANCY MASTEN, and AMBER
BEAR FARM, LLC,

      Defendants and Appellees

    and

MIKE and NANCY MASTEN, and
AMBER BEAR FARM, LLC,

      Third-Party Plaintiffs and Appellees,

  v.

HANNAH HERNANDEZ,

      Third-Party Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                      In and For the County of Sanders, Cause No. DV-10-95
                      Honorable C.B. McNeil, Presiding Judge

COUNSEL OF RECORD:

      For Appellants and Third-Party Appellant Hernandez, Hinds-Hernandez, and
      Hernandez:

            David K.W. Wilson, Jr., Jonathan R. Motl, Morrison, Motl & Sherwood,
            PLLP, Helena, Montana

            Elizabeth A. Brennan, Attorney at Law, Missoula, Montana

For Appellant David Kaestner:

   Christopher W. Froines, Geiszler & Froines, Missoula, Montana

For Appellees and Cross-Appellants:

   Quentin M. Rhoades, Liesel Shoquist, Sullivan, Tabaracci
   & Rhoades, P.C., Missoula, Montana

Submitted on Briefs:  October 24, 2012

Decided:  December 11, 2012

Filed:

_____
                    Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     This dispute arises over water distribution and use rights. The parties to this case are owners of contiguous real property located in Heron, Montana. Nancy and Mike Masten currently own the land from which the water source originates. David Kaestner and Cesar, Colleen, and their adult daughter Hannah Hernandez (Hernandez) own adjacent properties. In litigation dating back to the 1970s, the predecessors in interest of the parties litigated a water dispute, and the court issued a decree in which the water was essentially divided between the parcels, with Kaestner's predecessor being given a perpetual easement for construction and maintenance of a pipeline to his property. The court ordered that the water rights would run with the land. Kaestner and Cesar and Colleen Hernandez sued the Mastens over use and distribution of the water and the Mastens counterclaimed. A jury ruled in favor of the Mastens. Kaestner and Hernandez moved to have the verdict set aside but the District Court denied their motion. They appeal. We affirm in part and reverse and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     After the various parties acquired their parcels of property, their relationship went from cordial to contentious. Mastens were unsure whether Kaestner and Hernandez had legitimate water rights and Mastens claim the men would not provide proof of such rights. In fact, Mastens' attorney subsequently concluded Kaestner and Hernandez did not have water rights and deemed them trespassers. The relationship worsened and ultimately became dangerous in April 2010 when Mike Masten accused Kaestner and Cesar of unlawful trespassing. Masten aimed and discharged a rifle near the men and told them to get off his land.

¶4     In June 2010, Kaestner and Hernandez filed a complaint against Mastens which included two counts: negligence and punitive damages. The Mastens answered the Complaint, denied the charge of negligence, asserted affirmative defenses and set forth a third-party complaint against Hannah. Mastens also counterclaimed against Kaestner and Hernandez for intentional and negligent infliction of emotional distress, trespass, nuisance, interference with business opportunity,[1] punitive damages and conversion. They asserted the same claims, with the exception of conversion, against Hannah, whose name is also on the land deed with her mother. Kaestner and Hernandez subsequently filed an amended complaint in May 2011. In it they again asserted negligence and requested punitive damages, but added charges of civil assault and intentional infliction of emotional distress.

¶5     A jury trial was conducted in October 2011. Over the course of the five-day trial, the jury heard copious and conflicting testimony pertaining to water rights and trespass,

---

[1] Mastens built and operate the Amber Bear Bed & Breakfast on their property.

as well as allegations of racial slurs, threats of murder and mayhem, and repeated incidents of general rude, boorish behavior on the part of all parties. At the close of testimony, the jury was presented with a Special Verdict Form. The jury determined that the Mastens: (1) assaulted Kaestner and Cesar and committed intentional acts that caused emotional distress to the two men but that such acts had not caused injury warranting payment of damages; (2) had not acted negligently toward Kaestner or Cesar; (3) had neither caused emotional distress nor acted negligently toward Colleen Hernandez; and (4) were justified in the use of force or the threat to use force in the protection of their property. The jury also found that Kaestner and Hernandez: (1) had committed intentional acts causing compensable emotional distress to the Mastens; and (2) acted intentionally and willfully with calculation to damage the Mastens' bed and breakfast business. The jury awarded Mastens $141,000 in business-related damages, and Nancy and Mike Masten were each awarded $25,000 for emotional distress. Lastly, the jury determined that Kaestner and Hernandez acted with actual malice toward the Mastens and awarded the Mastens $50,000 in punitive damages. Kaestner and Hernandez moved to have the verdict set aside but the District Court denied their motion. They appeal.

## ISSUES

¶6     Kaestner and Hernandez raise the following issues on appeal:

¶7     Did the District Court err in denying their M. R. Civ. P. 50(b) (Rule 50(b)) motion on:

   a.     Mastens' intentional interference with business claim;

   b.     the jury's verdict awarding Mastens punitive damages;

5

c.  Mastens' claim that Cesar acted as an agent of Hannah and Colleen Hernandez;

d.  the jury's verdict that Kaestner and Hernandez are jointly and severally liable to the Mastens;

e.  Mastens' affirmative defense of justified use of force; and

f.  Mastens' intentional infliction of emotional distress claim?

¶8  Did the District Court err in denying Kaestner and Hernandez's Rule 59 motion on the grounds that the jury's verdict evidenced such confusion and misunderstanding as to require a new trial?

¶9  Mastens cross-appeal on the following issue:

¶10  Did the District Court err in denying their motion for attorney fees on the issue of justifiable use of force?

**DISCUSSION**

¶11  *Did the District Court err in denying Kaestner and Hernandez's Rule 50(b) motions for judgment as a matter of law?*

¶12  As we have established previously, "Unless there is a complete absence of any credible evidence in support of the verdict, a [judgment as a matter of law] motion is not properly granted." *Massee v. Thompson*, 2004 MT 121, ¶ 26, 321 Mont. 210, 90 P.3d 394. "A judgment as a matter of law entered pursuant to Rule 50(b), M.R.Civ.P., may be granted only where it appears as a matter of law that a party could not prevail upon any view of the evidence including the legitimate inferences to be drawn therefrom." *Massee*, ¶ 25 (citations omitted).

¶13 Rule 50 provides generally that if the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the movant may, following trial, file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

¶14 At the close of Mastens' case, Kaestner and Hernandez moved to dismiss most of Mastens' causes of action under Rule 50(a). The District Court granted the motion as it pertained to trespass, conversion and nuisance. On October 28, 2011, the fifth day of trial, after the jury returned its verdict in favor of Mastens, Kaestner and Hernandez moved for judgment as a matter of law. They primarily claimed that the evidence presented was insufficient to justify the verdict. The District Court denied the motion.

¶15 On December 22, 2011, Kaestner and Hernandez renewed their motion for judgment as a matter of law and also moved to set aside the jury verdict, or in the alternative, for a Rule 59 order for a new trial. They claimed the verdicts against Hannah and Colleen based upon agency principles should be set aside as should the verdict against Kaestner and Hernandez that was based upon joint and several liability. They also moved to set aside the entire verdict, arguing that the Verdict Form was confusing and inconsistent. The District Court denied the motion to set aside the verdict and refused to order a new trial.

*Kaestner and Hernandez claims: Intentional Interference with Mastens' Business*

¶16 There are four elements to an intentional interference with a business claim, also known as "intentional interference with prospective economic advantage." In this case, the jury was required to determine whether Kaestner and the Hernandez's acts were: (1)

7

intentional and willful; (2) calculated to cause damage to Mastens' business; and (3) were done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of Kaestner and Hernandez. And lastly, the tortious acts had to result in actual damage or loss. *Maloney v. Home & Inv. Ctr., Inc.*, 2000 MT 34, ¶ 41, 298 Mont. 213, 994 P.2d 1124.

¶17 Mastens claimed that Kaestner and Hernandez: (1) repeatedly vandalized the Amber Bear Inn signage; (2) posted other signage on the driveway to their bed and breakfast that was intended to discourage or dissuade potential guests; (3) put up a locked gate that blocked the entrance to the inn; (4) vandalized Mastens' rental house by putting a dead animal in it; (5) distributed handbills in the community implying that the Amber Bear Inn was a "sex club"; and (6) disrupted Mastens' duties to their guests by coming onto the property causing trouble, thereby pulling Mastens away from attending to their business. Kaestner and Hernandez denied these claims but the jury ruled in favor of the Mastens.

¶18 This Court gives deference to a jury's verdict if it is supported by evidence. Additionally, as we stated in *Sandman v. Farmers Ins. Exch.*, 1998 MT 286, 291 Mont. 456, 969 P.2d 277, our review of jury verdicts is very limited and we will not reverse such a verdict if it supported by "substantial credible evidence." We have defined "substantial credible evidence" as evidence—even weak and conflicting evidence—that a "reasonable mind might accept as adequate to support a conclusion." Moreover, upon reviewing a jury verdict to determine if substantial credible evidence exists to support the

8

verdict, this Court must view the evidence in the light most favorable to the prevailing party. *Sandman*, ¶ 40 (citations omitted).

¶19    In this case, the jury's verdict was supported by Mastens' evidence which the jury chose to believe over Kaestner and Hernandez's testimony. Based upon the standards set forth in *Sandman*, the District Court did not err in denying judgment as a matter of law and declining to order a new trial.

*Punitive Damages*

¶20    Section 27-1-221, MCA, allows reasonable punitive damages to be awarded when a defendant has been found guilty of actual malice. Kaestner and Hernandez claim the evidence presented to the jury did not establish "actual malice" and therefore cannot support an award of punitive damages. However, the jury was presented with evidence that Kaestner and Hernandez *intentionally* committed numerous torts against Mastens with intent to inflict emotional distress and to interfere with their business. The intentional nature of these acts justified the finding that Kaestner and Hernandez had acted with "actual malice." For this reason, the District Court did not err in denying their Rule 50(b) motion. However, that is not the end of our analysis.

¶21    Section 27-1-221(7)(c), MCA, requires a judge to review a jury award of punitive damages, giving consideration to each of the matters listed in § 27-1-221(7)(b), MCA. After such a review, the judge must clearly state the reasons for increasing, decreasing, or not increasing or decreasing the punitive damages award of the jury in findings of fact and conclusions of law, demonstrating consideration of each of the factors listed in subsection (7)(b). The District Court did not comply with this statutory obligation.

9

¶22 While we affirm the determination that a punitive damage award was justified in this case, we remand this matter to the District Court for consideration of the statutory factors and the issuance of amended Findings of Fact, Conclusions of Law, and Order.

*Cesar Hernandez as agent for Hannah and Colleen Hernandez*

¶23 Kaestner and Hernandez moved for dismissal of all claims against Hannah and Colleen, arguing that Cesar was not Hannah or Colleen's agent; therefore, they could not be held liable for his actions. Kaestner and Hernandez argue that the jury was not presented with evidence of an agency relationship nor did the Jury Verdict Form address liability based upon agency. However, the jury was presented with evidence of tortious acts and wrong doing on the part of Kaestner, Cesar, Hannah and Colleen Hernandez, and the Jury Verdict Form specifically inquired, for each claimed tort, whether Kaestner, Cesar, Hannah and Colleen engaged in the tortious conduct. The jury concluded that each plaintiff and the third-party defendant had committed the acts and were therefore liable. As a result, Kaestner and Hernandez's agency argument is moot and we affirm the District Court's denial of their Rule 50(b) motion as it pertains to agency liability.

*Joint and Several Liability*

¶24 Kaestner and Hernandez argue that the District Court erred in denying their Rule 50(b) motion on the issue of joint and several liability. Again, the jury found each of the individual plaintiffs and the third-party defendant were "liable for having caused damages" to Mastens. As such, individual liability has been established. Because each of these parties is liable for the full amount of damages due to Mastens, a holding by the

10

District Court that the tortfeasors are joint and severally liable for the damages to Mastens need not be further addressed.

*Justified Use of Force*

¶25 During the trial, Mastens claimed Mike's use of a rifle to fire shots in the general direction of Kaestner and Cesar was a justified use of force. The jury agreed and concluded Masten was justified in his use of force. Kaestner and Hernandez claim there was a lack of evidence to support the jury's finding.

¶26 Section 45-3-101(1)(a), MCA, defines "force likely to cause death or serious bodily harm" as "the firing of a firearm in the direction of a person, even though no purpose exists to kill or inflict serious bodily harm." "Forcible felony" is defined as "any felony which involves the use or threat of physical force or violence against any individual." Section 45-3-101(2), MCA. Section 45-3-104, MCA, states that

> A person is justified in the use of force or threat to use force against another when and to the extent that the person reasonably believes that the conduct is necessary to prevent or terminate the other person's trespass on or other tortious or criminal interference with either real property, other than an occupied structure, or personal property lawfully in the person's possession or in the possession of another who is a member of the person's immediate family or household or of a person whose property the person has a legal duty to protect. *However, the person is justified in the use of force likely to cause death or serious bodily harm only if the person reasonably believes that the force is necessary to prevent the commission of a forcible felony.* (Emphasis added.)

¶27 Mastens testified that, on the day Mike Masten took his gun and followed Kaestner and Cesar to the water site, they reasonably believed Kaestner and Cesar were trespassers intent on carrying out their threats to destroy the water source. While destruction of the water supply for several families is a serious matter, under the

11

applicable statutes, it does not warrant the use of lethal force in an attempt to protect it. Section 45-3-104, MCA, would allow Mike Masten to fire a weapon, i.e., use "force likely to cause death or serious bodily harm," only if he reasonably believed he had to prevent Kaestner and Cesar from using or threatening physical force or violence against a person. As a result, the defense of "justified use of force" should never have reached the jury as the elements were not satisfied. Accordingly, we reverse the jury's determination that Mike Masten was justified in his use of force.

¶28 The jury determined that Kaestner and Hernandez suffered no compensable damages for emotional distress or as a result of other intentional acts committed by Mastens; thus, reversal on this issue does not otherwise alter the jury's determination. It does, however, affect Mastens' counterclaim as addressed below.

*Intentional Infliction of Emotional Distress*

¶29 The jury unanimously concluded that Kaestner and Hernandez committed intentional acts against Mastens that caused emotional distress. The jury was presented with considerable evidence of emotional distress purported to be caused by Kaestner and Hernandez's actions. As there was evidence to support the jury's determination, we affirm the District Court's denial of Kaestner and Hernandez's Rule 50(b) motion to set aside the ruling.

*Rule 59 Motion for a New Trial*

¶30 Kaestner and Hernandez base their Rule 59 request for a new trial on their claim that "the jury evidenced such confusion in its verdict that a new trial is required." Kaestner and Hernandez point out specific flaws with the Verdict Form and maintain that

12

the District Court should have granted their motion for a new trial. We disagree. The record unequivocally reflects that all counsel agreed to the Special Verdict Form after lengthy discussion with the District Court. We will not put a district court in error for an action in which the appealing party acquiesced. *Horn v. Bull River Country Store Props.*, 2012 MT 245, ¶ 25, 366 Mont. 491, ___ P.3d ___.

¶31 *Mastens' Counterclaim: Did the District Court err in denying their motion for attorney fees on the issue of justifiable use of force?*

¶32 As we have reversed the jury's determination that Mike Masten was justified in his use of force, the Mastens are not entitled to attorney fees under § 27-1-722, MCA. Accordingly, we need not address their argument of District Court error as it pertains to this issue.

¶33 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The District Court's denial of Kaestner and Hernandez's motions for judgment notwithstanding the verdict is supported by substantial evidence and the legal issues are controlled by settled Montana law, which the District Court correctly interpreted.

¶34 We reverse the jury's verdict that Mike Masten was justified in his use or threat of use of lethal force and we remand for amended Findings of Fact, Conclusions of Law, and Order as it pertains to the value of the punitive damages award under § 27-1-221(7)(c), MCA. We affirm on all remaining issues.

/S/ PATRICIA COTTER

We concur:


/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS